Docket No. 08 Civ.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NEW YORK CITY EMPLOYEES' RETIREMENT
SYSTEM, THE TEACHERS' RETIREMENT SYSTEM
OF THE CITY OF NEW YORK, THE NEW YORK
CITY POLICE PENSION FUND, THE NEW YORK
CITY FIRE DEPARTMENT PENSION FUND,
THE NEW YORK CITY BOARD OF EDUCATION
RETIREMENT SYSTEM,

Plaintiffs,

- against -

THE APACHE CORPORATION,

Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
*Attorney for Plaintiffs*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Jeremy I. Huntone (JH8425)*
*Tel: (212) 788-0989*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... ii

PRELIMINARY STATEMENT .................................................................. 1

STATEMENT OF FACTS .......................................................................... 2

ARGUMENT

        THE COURT SHOULD ISSUE A TEMPORARY
        RESTRAINING ORDER AND A PRELIMINARY
        INJUNCTION PROHIBITING APACHE FROM
        SOLICITING PROXIES FOR ITS 2008 ANNUAL
        MEETING    WITHOUT    INCLUDING    THE
        FUNDS' STOCKHOLDER PROPOSAL ................................................ 10

    A.   A    Temporary    Restraining    Order    and
        Preliminary Injunction Should Be Granted
        upon a Showing of Irreparable Harm and
        Likelihood of Success on the Merits. ................................................ 10

    B.   The Funds have a Substantial Likelihood of
        Success    in    Showing    that    its    Anti-
        Discrimination Proposal Must be Included in
        Apache's Proxy Materials. ................................................................ 11

      1.   The Governing Statute and Regulations Create
        a Presumption in Favor of a Stockholder
        Proposal's Inclusion in a Corporation's Proxy
        Materials. ........................................................................................... 11

      2.   The Funds' Proposal Does Not Come Within
        the "Ordinary Business" Exception of Rule
        14a-8(i)(7) Because the Proposal Addresses a
        Significant Social Policy Concern. ..................................................... 13

      3.   The Funds' Proposal is Identical to the Proposal
        in *Armor Holdings* and Should, Therefore,
        Receive the Same Treatment ........................................................... 20

    C.   The Funds Will Be Irreparably Harmed if
        Apache Is Permitted To Exclude the Funds'
        Proposal from its Proxy Materials. ................................................... 21

CONCLUSION ................................................................................................ 22

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                          <u>Pages</u>

<u>Acquaire v. Canada Dry Bottling Co. of New York</u>,
   24 F.3d 401 (2d Cir. 1994)............................................................................10

<u>Amalgamated Clothing and Textile Workers Union v. Wal-Mart Stores, Inc.</u>,
   821 F.Supp. 877 (S.D.N.Y. 1993) ...............................................11, 13, 14, 15, 19

Aquila, Inc.,2006 SEC No-Act. LEXIS 296 (March 2, 2006)...............................19, 20

Armor Holdings, Inc., 2007 S.E.C. No-Act. LEXIS 430 (April 3, 2007) ..................7, 8, 19, 20

<u>Austin v. Consol. Edison Co. of New York</u>,
   788 F.Supp. 192 (S.D.N.Y. 1992) ..............................................................13, 15

<u>The Bon-Ton Stores, Inc. v. The May Dep't. Stores Co.</u>,
   881 F.Supp. 860 (W.D.N.Y. 1994)...............................................................10

Federated Dep't Stores, Inc., 2002 SEC No.-Act. LEXIS 530 (March 27, 2002)........................19

<u>Grimes v. Centerior Energy Corp.</u>,
   909 F.2d 529 (D.C. Cir. 1990),
   <u>cert</u>. <u>denied</u>, 498 U.S. 1073, 111 S.Ct. 799 (1991) .........................................14

<u>Gulf & Western Indus., Inc. v. Great A. & P. Tea Co., Inc.</u>,
   476 F.2d 687 (2d Cir. 1973)........................................................................11

<u>Howell v. Mgmt. Assistance, Inc.</u>, 519 F. Supp. 83 (S.D.N.Y. 1981) ..........................................22

<u>J.I. Case Co. v. Borak</u>,
   377 U.S. 426, 84 S. Ct. 1555 (1964).............................................................12

<u>Lovenheim v. Iroquois Brands, Ltd.</u>,
   618 F.Supp. 554 (D.D.C. 1985) ..................................................................21

<u>Medical Comm. for Human Rights v. SEC</u>,
   432 F.2d 659 (D.C. Cir. 1970),
   <u>vacated</u> <u>as</u> <u>moot</u>, 404 U.S. 403, 92 S.Ct. 577 (1972) ..........................................12, 14

<u>New York City Employees' Ret. Sys. v. Am. Brands, Inc.</u>,
   634 F.Supp. 1382 (S.D.N.Y. 1980) .............................................................21, 22

**Cases**                                                                                              **Pages**

New York City Employees' Ret. Sys. v. Dole Food Co., Inc.,
    795 F.Supp. 95 (S.D.N.Y. 1992),
    vacated as moot, 969 F.2d 1430 (2d Cir. 1992)..............................................13, 15, 21

New York Pathological and X-Ray Lab. Inc. v. Immigration and
    Naturalization Serv.,
    523 F.2d 79 (2d Cir. 1975).........................................................................................21

PepsiCo, Inc., 1998 SEC No-Act. 333 (February 23, 1998).........................................19

RJR Nabisco Holdings Corp., 1998 S.E.C. No-Act. LEXIS 316 (February 23, 1998)................19

Roosevelt v. E.I. Du Point de Nemours & Co.,
    958 F.2d 416 (D.C. Cir. 1992)............................................................................12, 18, 22

Tootsie Roll Industries, Inc., 2002 S.E.C. No-Act. LEXIS 80 (January 31, 2002)......................19

Towers Fin. Corp. v. Dun & Bradstreet, Inc.,
    803 F.Supp. 820 (S.D.N.Y. 1992) ..............................................................................11

Zenith Radio Corp. v. United States,
    437 U.S. 443, 98 S.Ct. 2441 (1978)............................................................................15

**Statutes**

17 C.F.R. 240.14-a8(i)(7) ..........................................................................7, 8, 13, 14, 18

17 C.F.R. § 240.14a-8 ....................................................................................6, 12, 13

17 C.F.R. 240.14a-8(c)(7)..........................................................................................14

Fed. R. Civ. P. 65.....................................................................................................10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————

THE NEW YORK CITY EMPLOYEES' RETIREMENT
SYSTEM, THE TEACHERS' RETIREMENT SYSTEM
OF THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE PENSION FUND, THE NEW YORK CITY
FIRE DEPARTMENT PENSION FUND,
THE NEW YORK CITY BOARD OF EDUCATION
RETIREMENT SYSTEM,

                                                    08 Civ.

                                    Plaintiffs,

        -against-

THE APACHE CORPORATION,

                                    Defendant.

—————————————————————

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

### Preliminary Statement

Plaintiffs, the New York City Employees' Retirement System ("NYCERS"), the Teachers' Retirement System of the City of New York ("TRS"), The New York City Police Pension Fund ("PPF"), the New York City Fire Department Pension Fund ("FPF"), and the New York City Board of Education Retirement System ("BERS"), collectively referred to as the New York City Pension Funds (the "Funds"), seek preliminary and permanent relief enjoining defendant Apache Corporation ("Apache") from violating the Securities Exchange Act of 1934 and the U.S. Securities and Exchange Commission's ("SEC") implementing regulations by willfully excluding the Funds' stockholder proposal from Apache's proxy solicitation materials for its 2008 Annual Meeting for Stockholders ("2008 Annual Meeting"). Upon information and

belief, Apache mailed its proxy materials to stockholders on March 31, 2008 without including

the Funds' stockholder proposal designed to address the significant social policy issue of

employment discrimination on the basis of sexual orientation and gender identity.

Pursuant to law, Apache was required to include the Funds' shareholder proposal

in its mailing. Its failure to do so will deprive shareholders of the opportunity to learn of and to

cast an informed vote on the proposal at the 2008 annual meeting scheduled for early May.

Judicial intervention therefore is necessary. This Court should issue a temporary restraining

order and preliminary injunction mandating that Apache provide shareholders with a copy of

plaintiffs' proposal by performing a supplemental proxy solicitation mailing immediately.

## STATEMENT OF FACTS

Plaintiff NYCERS is a public pension system organized and existing under the

laws of the State and City of New York for the benefit of hundreds of thousands of present and

former employees of the City of New York who are not eligible to participate in any of the other

New York City public pension funds. NYCERS has the capacity to sue and be sued.

NYCERS is administered by a Board of Trustees which includes three elected employee

members, and representatives from the Mayor's Office, Public Advocate of the City of New York,

the Comptroller of the City of New York ("Comptroller"), the Office of the Manhattan

Borough President, the Office of the Brooklyn Borough President, the Office of the Bronx

Borough President, the Office of the Queens Borough President, and the Office of the Staten

Island Borough President. Pursuant to statute, the Comptroller is the custodian of the assets

and chief investment advisor for NYCERS. See Complaint, ¶ 4; see also Administrative Code

of the City of New York ("Administrative Code"), §§ 13-103, 13-120, and 13-136.

Plaintiff TRS is a public pension system organized and existing under the laws of

the State and City of New York for the benefit of hundreds of thousands of present and former

public school teachers and other employees of the City of New York. TRS has the capacity to

sue and be sued. TRS is administered by a seven member Board of Trustees which includes three elected members of TRS, and representatives from the Mayor's Office, Department of Education, the Comptroller, and Chancellor of the Department of Education.  Pursuant to statute, the Comptroller is the custodian of  the assets and chief investment advisor for TRS. See Complaint, ¶ 5; see also Administrative Code §§ 13-507, 13-511, and 13-536.

Plaintiff PPF is a public pension system organized and existing under the laws of the State and City of New York for the benefit of present and former full-time uniformed employees of the New York City Police Department.  PPF has the capacity to sue and be sued. PPF is administered by a Board of Trustees which includes representatives from the Mayor's Office, the Comptroller, the Police Commissioner, the New York City Department of Finance, the Patrolmen's Benevolent Association, the Sergeants' Benevolent Association, the Detectives' Endowment Association, the Captains' Endowment Association, and the Lieutenants' Benevolent Association. Pursuant to statute, the Comptroller is the custodian of the assets and chief investment advisor for PPF.  See Complaint, ¶ 6; see also Administrative Code §§ 13-216, 13-220, and 13-235.

Plaintiff FPF is a public pension system organized and existing under the laws of the State and City of New York for the benefit of present and former full-time uniformed employees of the New York City Fire Department.  FPF has the capacity to sue and be sued. FPF is administered by a Board of Trustees which includes representatives from the Mayor's Office, the Comptroller, the Fire Commissioner, the New York City Department of Finance, the Uniformed Firefighters Association, the Uniformed Fire Officers Association, and the Uniformed Pilots and Marine Engineer' Association. Pursuant to statute, the Comptroller is the custodian of  the assets and chief investment Advisor for FPF. See Complaint, ¶ 7; see also Administrative Code §§ 13-316, 13-320, and 13-338.

Plaintiff BERS is a public pension system organized and existing under the laws of the State and City of New York for the benefit of present and former non-pedagogical

employees of the New York City Department of Education. BERS has the capacity to sue and be sued. BERS is administered by a Retirement Board which includes two elected employee members and representatives from the Mayor's Office, the Department of Education, the Office of the Manhattan Borough President, the Office of the Brooklyn Borough President, the Office of the Bronx Borough President, the Office of the Queens Borough President, and the Office of the Staten Island Borough President. Pursuant to statute, the Comptroller is the custodian of the assets and chief investment Advisor for BERS. See Complaint, ¶ 8; see also New York State Education Law, § 2575.

The Funds seek to present a shareholder proposal at Apache's 2008 Annual Meeting, scheduled for May 8, 2008. The Funds' proposal lists certain principles relating to avoiding discrimination based on sexual orientation and gender identity, and requests that Apache adopt equal employment opportunity policies based on the aforementioned principles prohibiting discrimination based on sexual orientation and gender identity. The proposal is as follows:

> **WHEREAS,** corporations with non-discrimination policies relating to sexual orientation have a competitive advantage to recruit and retain employees from the widest talent pool;
>
> Employment discrimination on the basis of sexual orientation diminishes employee morale and productivity;
>
> The company has an interest in preventing discrimination and resolving complaints internally so as to avoid costly litigation and damage its reputation as an equal opportunity employer;
>
> Atlanta, Seattle, Los Angeles, and San Francisco have adopted legislation restricting business with companies that do not guaranteed equal treatment for lesbian and gay employees and similar legislation is pending in other jurisdictions;
>
> The company has operations in and makes sales to institutions in states and cities which prohibit discrimination on the basis of sexual orientation;

- 4 -

A recent National Gay and Lesbian Taskforce study has found that 16% -44% of gay men and lesbians in twenty cities nationwide experienced workplace harassment or discrimination based on their sexual orientation;

National public opinion polls consistently find more than three-quarters of the American people support equal rights in the workplace for gay men, lesbians, and bisexuals;

A number of Fortune 500 corporations have implemented non-discrimination policies encompassing the following principles:

1) Discrimination based on sexual orientation and gender identity will be prohibited in the company's employment policy statement.

2) The company's non-discrimination policy will be distributed to all employees.

3) There shall be no discrimination based on any employee's actual or perceived health condition, status, or disability.

4) There shall be no discrimination in the allocation of employee benefits on the basis of sexual orientation or gender identity.

5) Sexual orientation and gender identity issues will be included in corporate employee diversity and sensitivity programs.

6) There shall be no discrimination in the recognition of employee groups based on sexual orientation or gender identity.

7) Corporate advertising policy will avoid the use of negative stereotypes based on sexual orientation or gender identity.

8) There shall be no discrimination in corporate advertising and marketing policy based on sexual orientation or gender identity.

9) There shall be no discrimination in the sale of goods and services based on sexual orientation or gender identity, and

10) There shall be no policy barring on corporate charitable contributions to groups and organizations based on sexual orientation.

**RESOLVED:** The Stockholders request that management implement equal employment opportunity policies based on the aforementioned principles prohibiting discrimination based on sexual orientation and gender identity.

**STATEMENT:** By implementing policies prohibiting discrimination based on sexual orientation and gender identity, the Company will ensure a respectful and supportive atmosphere for all employees and enhance its competitive edge by joining the growing ranks of companies guaranteeing equal opportunity for all employees.

Exhibit A to the Declaration of Richard S. Simon, submitted in support of plaintiffs' motion for a temporary restraining order and a preliminary injunction, dated April 7, 2008.[1]

October 29, 2007, the Comptroller's Office informed Apache of its intent, on behalf of the Funds, to propose this resolution at the company's 2008 Annual Meeting, and requested that the proposal be included in the proxy solicitation materials for the Annual Meeting pursuant to Rule 14a-8 of the Securities Exchange Act of 1934 ("Rule 14a-8"). The Comptroller's Office also attached letters prepared by The Bank of New York attesting to the Funds' collective ownership of 911,197 shares of Apache common stock for more than one year. See Exhibit A.[2]

By letter dated January 3, 2008, Apache wrote to the SEC Division of Corporation Finance, requesting the issuance of a "no-action letter," which is a written determination that the SEC staff would not recommend that the SEC take action against Apache if Apache excluded the Funds' proposal from its proxy materials. Apache made that request on the grounds that, pursuant to Rule 14a-8(i)(7), the subject of the proposal impermissibly related to Apache's "ordinary business matters," including "advertising and marketing decisions," "sale of products," and "charitable giving." See Exhibit B.

---

[1] Unless otherwise stated, all exhibits referenced in this memorandum of law are annexed to the Simon Decl.

[2] According to the Comptroller's Bureau of Asset Management, the Funds owned in total, on October 29, 2007, approximately 911,197 shares of common stock in the Apache, with a market value as of that date of approximately $92.83 million. Simon Decl. at ¶¶ 3, 5, 7, 9, and 11.

By letter dated February 1, 2008, the Comptroller's Office, on behalf of the Funds, wrote to the SEC in response to Apache's January 3, 2008 letter. The Comptroller's Office explained that the "ordinary business" exception did not apply in this instance, because prohibiting discrimination based on sexual orientation and gender identity relates to significant social policy issues, thus transcending "ordinary business." In support of this position, the Comptroller's Office noted that the SEC staff, in its April 3, 2007 Armor Holdings, Inc. letter ("*Armor Holdings*"), declined to issue a "no action letter" with respect to an identical proposal that the Funds presented to that company. Apache's January 3, 2008 letter to the SEC had failed to mention *Armor Holdings*. The Comptroller's Office further noted that the SEC, in 1998 formal rulemaking, had expressly reversed its earlier position that a company could omit, on ordinary business grounds, a proposal seeking a prohibition against employment discrimination based on sexual orientation. The Comptroller's Office, accordingly, requested that Apache's request for a "no action letter" be denied. See Exhibit C.

By letter dated February 8, 2008, Apache responded to the February 1, 2008 letter from the Comptroller's Office. Apache again contended that the Funds' 2008 proposal was excludable from its proxy materials, and attempted to distinguish this matter from *Armor Holdings* by asserting that Armor Holdings, Inc., in alleged contrast to Apache, had failed to meet it burden of establishing that the proposal related to ordinary business matters. See Exhibit D.

On February 14, 2008, the Comptroller's Office wrote to the SEC in response to Apache's February 8, 2008 letter. The Comptroller's Office again requested that Apache's no-action request be denied, emphasizing that neither the Funds' proposals, nor the companies' arguments, in *Armor Holdings* and *Apache* were distinguishable. See Exhibit E.

- 7 -

On March 5, 2008, the SEC staff granted Apache's request for a "no-action letter" for the 2008 proposal at issue here, and so issued a letter informing Apache that staff would not recommend to the SEC that the SEC take action against Apache if it omitted the Funds' proposal from its proxy materials. See Exhibit F. Specifically, the no-action letter stated, in part:

> There appears to be some basis for your view that Apache may exclude the proposal under rule 14a-8(i)(7). We note in particular that some of the principles relate to Apache's ordinary business operations. Accordingly, we will not recommend enforcement action to the Commission if Apache omits the proposal from its proxy materials in reliance on rule 14a-8(i)(7).

Exhibit F.

In addition to Apache, the Funds in 2007 requested that two dozen other companies include nearly identical resolutions in their proxy solicitation materials. The Funds filed these resolutions with: HCC Insurance Holdings of Houston, Texas; Timken Company of Canton, Ohio; ExxonMobil Corp. of Irving, Texas; AK Steel Corporation of Middletown, Ohio; Fidelity National Financial, Inc. of Jacksonville, Florida; Brink's Company of Richmond, Virginia; Liberty Global, Inc. of Englewood, Colorado; Lyondell Chemical Company of Houston, Texas; Eastman Chemical Company of Kingsport, Tennessee; Tesoro Corporation of San Antonio, Texas; Murphy Oil Corporation of El Dorado, Arkansas; Kelly Services, Inc. of Troy, Michigan; EchoStar Communications Corporation of Englewood, Colorado; Huntsman Corporation of Salt Lake City, Utah; Marshall & Ulsley Corporation of Milwaukee, Wisconsin; Frontier Oil Corporation of Houston, Texas; Borg Warner Inc. of Auburn Hills, Michigan; Anadarko Petroleum Corporation of The Woodlands, Texas; Synovus Financial Corporation of Georgia; Erie Indemnity Company (Erie Insurance) of Erie, Pennsylvania; SPX Corporation of Charlotte, North Carolina; American Financial Group, Inc. of Cincinnati, Ohio; and Leggett & Pratt, Inc. of Carthage, Missouri. See Simon Decl., ¶ 20.

Furthermore, six of these companies have agreed to revise their policies to forbid discrimination based on sexual orientation and gender identity, without requiring a stockholder proxy vote. As a result, the Funds have withdrawn those resolutions. Additionally, ExxonMobil has agreed for the eighth year in a row to submit the Funds' proposal to the shareholders. See Simon Decl., ¶ 21.

## ARGUMENT

**THE COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION ENJOINING APACHE FROM SOLICITING STOCKHOLDER PROXIES FOR ITS 2008 ANNUAL MEETING WITHOUT INFORMING ITS STOCKHOLDERS OF THE FUNDS' SHAREHOLDER PROPOSAL, ENJOINING APACHE FROM EMPLOYING PROXIES SOLICITED IN SUCH A MANNER, AND FURTHER DIRECTING APACHE TO MAKE A SUPPLEMENTAL MAILING TO INFORM ITS STOCKHOLDERS ABOUT, AND TO SOLICIT PROXIES ON, THE FUNDS' SHAREHOLDER PROPOSAL.**

**A.    A Temporary Restraining Order and Preliminary Injunction Should Be Granted upon a Showing of Irreparable Harm, the Likelihood of Success on the Merits, and a Balancing of Hardships Tipping Decidedly Toward the Funds.**

In this Circuit, the standard for obtaining a preliminary injunction under Federal Rule of Civil Procedure 65 where the relief sought on the preliminary injunction motion is identical to that sought as the ultimate relief in the action, and where the action seeks a mandatory injunction and not mere maintenance of the status quo, is a showing of (a) irreparable harm and (b) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of the hardships tipping decidedly toward the party requesting the injunction. The Bon-Ton Stores, Inc. v. The May Dep't Stores Co., 881 F. Supp. 860, 866 (W.D.N.Y. 1994) (citing Acquaire v. Canada Dry Bottling Co. of New York, 24 F.3d 401, 409 (2d Cir. 1994)). At the preliminary injunction stage, the plaintiff need not prove its case on the merits; likelihood of success means that "the evidence presented demonstrates that plaintiff's allegations are of sufficient substance as to warrant an examination of the other requirements necessary to grant a preliminary injunction."

- 10 -

Bon-Ton Stores, 881 F. Supp. at 866 (quoting Gulf & Western Indus., Inc. v. Great A. & P. Tea Co., Inc., 476 F.2d 687, 699 (2d Cir. 1973)). Here, as will be shown below, the Funds are undoubtedly likely to succeed in their argument that their anti-discrimination proposal is a proper one for inclusion in Apache's proxy materials. Moreover, the balance of hardships tips decidedly toward the Funds in this instance, as they will be irreparably harmed if their proposal is unlawfully excluded from a proxy mailing for Apache's 2008 annual meeting because, as a result, the Funds would miss their once-annual opportunity to communicate with other stockholders. Defendant Apache, on the other hand, will sustain no harm from the Court's issuance of preliminary relief in this instance, as the only effect upon Apache will be to require a supplemental mailing of proxy materials for the Funds' proposal for consideration at Apache's 2008 Annual Meeting.

The standard for obtaining a temporary restraining order is the same as that for a preliminary injunction. See Towers Fin. Corp. v. Dun & Bradstreet, Inc., 803 F. Supp. 820, 822 (S.D.N.Y. 1992). The particular need for a temporary restraining order in this case arises from the immediacy of the irreparable harm, which involves Apache's rapidly approaching 2008 Annual Meeting, scheduled to occur on May 8, 2008.

As demonstrated below, the Funds more than meet the standard for preliminary relief.

**B.    The Funds have a Substantial Likelihood of Success in Demonstrating that its Anti-Discrimination Proposal Must be Included in Apache's Proxy Solicitation Materials.**

   **1.    The Governing Statute and Regulations Create a Presumption in Favor of Inclusion of a Stockholder Proposal's in a Corporation's Proxy Materials.**

Proxies are "an indispensable part of corporate governance" because shareholders in large, publicly held corporations do not personally attend annual meetings. Amalgamated Clothing and Textile Workers Union v. Wal-Mart Stores. Inc., 821 F.Supp. 877, 881 (S.D.N.Y.

- 11 -

1993). Congress delegated to the SEC the task of regulating proxy solicitations. Although Congress gave the SEC broad latitude to write rules to govern the proxy solicitation process, it made clear its intent that the proxies must be solicited in a manner that serves the goal of true stockholder democracy by allowing open communication among stockholders on issues of importance to them:

> In order that the shareholder may have adequate knowledge as to the manner in which his interests are being served, it is essential that he be enlightened not only as to the financial condition of the corporation, but also as to the major questions of policy, which are decided at shareholders' meetings.

S. Rep. No. 792, 73d Cong., 2d Sess. 12 (1934), quoted in Roosevelt v. E.I. Du Pont de Nemours & Co., 958 F.2d 416, 422 (D.C. Cir. 1992). In J.I. Case Co. v. Borak, 377 U.S. 426; 84 S.Ct. 1555 (1964), the Supreme Court surveyed the legislative history behind section 14(a) and found that Congress viewed "'fair corporate suffrage [as] an important right that should attach to every equity security bought on a public exchange" and that section 14 sought to "prevent the recurrence of abuses which . . . [had] frustrated the free exercise of the voting rights of shareholders.'" J.I. Case Co. at 431, citing H.R. Rep. No. 1383, 73d Cong., 2d Sess. 13, 14 (1934); see also Medical Comm. for Human Rights v. SEC, 432 F.2d 659, 676 (D.C. Cir. 1970), vacated as moot, 404 U.S. 403, 92 S.Ct. 577 (1972) ("It is obvious to the point of banality ... that Congress intended by its enactment of section 14 .. . to give true vitality to the concept of corporate democracy").

The SEC regulations promulgated under Section 14(a) guarantee the right of a company's stockholders to present proposals for action at the company's annual meeting and to have those proposals included in the company's proxy mailing in advance of that meeting. 17 C.F.R. § 240.14a-8. Thus, the SEC, in furtherance of the intent of Congress, has established a presumption in favor of a stockholder's proposal being included in a corporation's proxy

mailing, provided an individual or entity establishes their stockholder status and follows the correct procedures for submission of stockholder proposals as outlined in 17 C.F.R. § 240.14a-8 ("Rule 14a-8").

The presumption in favor of including a proposal can be overcome, and the corporation may refuse to include the proposal in its proxy materials, only after submitting its reasons to the SEC, and only if the proposal fits into one of thirteen content-based exceptions set forth in Rule 14a-8(i)(1-13).  See Wal-Mart, 821 F. Supp. At 882.  Apache bears the burden of proof to show that the proposal fits within one of the exceptions.  See New York City Employees' Ret. Sys. v. Dole Food Co., Inc., 795 F.Supp. 95, 99 (S.D.N.Y. 1992), vacated as moot, 969 F.2d 1430 (2d Cir. 1992); Austin v. Consol. Edison Co. of New York, 788 F.Supp. 192, 194 (S.D.N.Y. 1992).  Apache has argued that the Funds' proposal is exempt from proxy solicitation under the ordinary business exception, Rule 14a-8(i)(7).  As demonstrated below, this exception is inapplicable, and Apache is required by the SEC regulations to include the Funds' proposal in its proxy solicitation.

### 2. The Funds' Proposal Does Not Come Within the "Ordinary Business" Exception of Rule 14a-8(i)(7) Because the Proposal Addresses a Significant Social Policy Concern.

SEC regulations permit a company to exclude a stockholder's proposal from its proxy materials if the proposal "deals with a matter relating to the ordinary business operations" of the company.  Rule 14a-8(i)(7), 17 C.F.R. § 240.14a-8(i)(7).  Apache has argued that the Funds' proposal requesting that the company adopt equal employment opportunity policies prohibiting discrimination on the basis of sexual orientation and gender identity relates to ordinary business operations.  However, because the Funds' anti-discrimination proposal implicates a significant social policy issue on national, state, and local political agendas,

Apache's attempt to pigeonhole the proposal into the ordinary business exception cannot withstand scrutiny.

The ordinary business exception is premised on the notion that management cannot exercise its specialized talents effectively if corporate investors assert the power to dictate the minutiae of <u>daily</u> business operations. <u>Grimes v. Centerior Energy Corp.</u>, 909 F.2d 529, 532 (D.C. Cir. 1990) <u>cert. denied</u>, 498 U.S. 1073, 111 S.Ct. 799 (1991), quoting <u>Medical Comm.</u>, 432 F.2d at 679. It is not enough, however, for the proposal simply to affect, directly or indirectly, the day-to-day operations of the corporation, in order for the exception to apply. <u>Wal-Mart</u>, 821 F.Supp. at 891. If that were all that was required, the ordinary business exception would swallow the entire proxy rule, as all matters proper for a proposal will affect, in one way or another, the business operations of a company. <u>See Wal-Mart</u>, 821 F.Supp. at 890.

The SEC originally clarified the parameters to the exception in a 1976 Interpretive Release, which stated that only business matters that are "mundane in nature and do not involve any substantial policy" considerations may be omitted under exemption (c)(7).[3] <u>Wal-Mart</u>, 821 F.Supp. at 891, quoting Adoption of Amendments Relating to Proposals by Security Holders, Exchange Act Release No. 12999, 41 Fed. Reg. 52,994, 52,998 (Dec. 3, 1976) ("1976 Interpretive Release").[3] Conversely, proposals that have any major policy implications are "beyond the realm of an issuer's ordinary business operations." <u>Id.</u> Therefore, a stockholder proposal with substantial policy implications will not be excluded even if the proposal directly or indirectly affects the daily activities of the corporation. <u>Wal-Mart</u>, 821 F.Supp. at 891.

---

3 It should be noted that at the time of the 1976 Interpretive Release and through the time of the District Court's opinion in <u>Wal-Mart</u> in 1993, the ordinary business exception was codified as 17 C.F.R. 240.14a-8(c)(7). However, after subsequent amendments, the exception is now codified as 17 C.F.R. 240.14-a8(i)(7) ("Rule 14a-8(i)(7)").

Courts have deferred to the 1976 Interpretative Release.  See, Roosevelt, 958 F. 2d at 416; Wal-Mart, 821 F.Supp at 890; Dole Food Co., 795 F.Supp. at 100; Austin, 788 F.Supp. at 194; see also Zenith Radio Corp. v. United States, 437 U.S. 443, 450, 98 S.Ct. 2441, 2445 (1978) (agency's contemporaneous construction of a statute or its own regulations is to be given great weight).

The SEC again addressed the ordinary business operations exception in Exchange Act Release No. 34-40018, "Amendments to Rules on Shareholder Proposals," (May 21, 1998), 1998 SEC LEXIS 1001 (the "1998 Release").  In the 1998 Release, the SEC sought to reverse its position as stated in a 1992 no-action letter to Cracker Barrel Old Country Stores, Inc., which provided that all employment-related stockholder proposals raising social policy issues would be excludable under the ordinary business exception.  See 1992 SEC No-Act. LEXIS 984.  In doing so, the SEC provided reasoning for its reversal and referenced its 1976 Interpretative Release, stating:

> From time to time, in light of experience dealing with proposals in specific subject areas, and reflecting changing societal views, the [SEC] adjusts its view with respect to 'social policy' proposals involving ordinary business.  Over the years, the [SEC] has reversed its position on the excludability of a number of types of proposals, including plant closings, the manufacture of tobacco products, executive compensation, and golden parachutes.

1998 Release, at *16.  The SEC continued:

> Reversal of the Cracker Barrel no-action position will result in a return to a case-by-case analytical approach.  In making distinctions in this area, the [SEC] will continue to apply the applicable standard for determining when a proposal relates to 'ordinary business.'  The standard, originally articulated in the [SEC]'s 1976 release, provided an exception for certain proposals that raise significant social policy issues.

Id., at *17-*18.

The SEC went beyond the context of employment, by more generally addressing its analysis regarding when a proposal falls within the ordinary business exception, based upon two principal considerations: (1) whether proposals were related to ordinary business operations, but focused on sufficiently significant social policy issues to warrant a stockholder vote, and (2) the degree to which a proposal seeks to "micro-manage" the company. See id., at *20-*21. Specifically regarding the first consideration, the SEC stated:

> Certain tasks are so fundamental to management's ability to run a company on a day-to-day basis that they could not, as a practical matter, be subject to direct shareholder oversight. Examples include the management of the workforce, such as the hiring, promotion, and termination of employees, decisions on product quality and quantity, and the retention of suppliers. However, **proposals relating to such matters but focusing on sufficiently significant social policy issues (e.g. significant discrimination matters) generally would not be considered to be excludable, because the proposals would transcend the day-to-day business matters and raise policy issues so significant that it would be appropriate for a shareholder vote.**

Id. (emphasis added).

Regarding the second consideration, the SEC stated:

> The second consideration relates to the degree to which the proposal seeks to 'micro-manage' the company by probing too deeply into matters of a complex nature upon which shareholders, as a group, would not be in a position to make an informed judgment.

Id., at *21.

The Funds' proposal does not seek to "micro-manage" Apache, nor does it involve matters that are so complex that stockholders would not be in a position to make an informed judgment. On the contrary, the Funds' proposal requesting that Apache adopt equal employment opportunity policies prohibiting discrimination based on sexual orientation and gender identity involves extremely significant social policy issues that transcend day-to-day

business operations. Furthermore, such value judgments do not involve matters too complex for meaningful stockholder consideration.

Statistics illustrate how significant a social policy issue prohibiting employment discrimination on the basis of sexual orientation and gender identity has become. As stated in the Funds' proposal, a National Gay and Lesbian Taskforce study found that 16%-44% of gay men and lesbians in twenty cities nationwide experienced workplace harassment or discrimination based on their sexual orientation. See Exhibit A. National public opinion polls consistently find that over 75% of Americans support equal rights in the workplace for men, lesbians, and bisexuals. Id. Furthermore, in the instant case, over two-thirds of the Fortune 500 companies to which the Funds' proposal was sent have already decided to make the commitment to prohibit discrimination in the workplace on the basis of sexual orientation and gender identity. See id. Moreover, the cities of Atlanta, Seattle, Los Angeles, and San Francisco have adopted legislation restricting business with companies that do not guarantee equal treatment for lesbian and gay employees, with similar legislation pending in other jurisdictions. See id.

It should be noted that, in addition to Apache, the Funds in 2007 requested that two dozen other companies include nearly identical resolutions in their proxy solicitation materials. See Simon Decl., ¶ 20. Six of these companies have agreed to revise their policies to forbid discrimination based on sexual orientation and gender identity, without requiring a stockholder proxy vote. As a result, the Funds have withdrawn those resolutions. Additionally, ExxonMobil has agreed for the eighth year in a row to submit the Funds' proposal to the shareholders. See Simon Decl., ¶ 21.

It is significant that in defense of its refusal to include the Funds' anti-discrimination proposal in its proxy materials, Apache has cited a number of prior SEC no-action

letters, which Apache claims illustrate the SEC's position that many proposals involving ordinary business operations are excludable from proxy materials, despite also involving significant social policy issues. Apache's reliance upon the SEC's no-action letters is misplaced. In its March 5, 2008 no-action letter, the SEC did not find that the proposal did not relate to a significant social policy issue, but rather merely stated that "[t]here appears to be *some* basis for your view that Apache may exclude the proposal under rule 14a-8(i)(7). We note in particular that some of the principles relate to Apache's ordinary business operations." Id. (emphasis added). Similar language appears in many other SEC no-action letters. By seemingly refusing to address whether the Funds' proposal relates to significant social policy issues, the *Apache* letter "contravenes the 1976 Interpretive Release's explicit recognition that all proposals could be seen as involving *some* aspect of day-to-day business operations." Wal-Mart, 881 F.Supp. at 890. In other words, the Court in Wal-Mart recognized that all proposals could be viewed as effecting at least some aspect of ordinary business operations, but that this basis for the exclusion of proposals is insufficient when the proposal involves significant social policy issues.

The Court does not owe deference to the SEC's position in its March 5, 2008 no-action letter to Apache, nor to the no-action letters Apache cited in defense of its position. Unlike the 1976 and 1998 Releases, an individual no-action letter "is not an expression of agency interpretation to which the court must defer." Wal-Mart, 821 F.Supp. at 885; see Roosevelt, 958 F.2d at 427 n.19 (SEC no-action letter not entitled to deference because it is not "agency adjudication or rulemaking"). Moreover, unlike the 1976 and 1998 Releases, the no-action letter is not an agency rule issued pursuant to appropriate procedures, such as notice and comment. See Wal-Mart, 881 F.Supp. at 890 n.13.

It is true that, although courts need not defer to individual no-action letters, courts

- 18 -

may rely on the "consistency or inconsistency of the SEC staff's position and reasoning, on a given issue." Wal-Mart, 881 F.Supp. at 885. However, a review of the SEC's position on the ordinary business operations exception during the past decade reveals an inconsistent approach. Indeed, the SEC has refused to exclude two very recent proposals implementing non-discrimination policies, which would suggest that similar treatment of the Funds' proposal is appropriate. See Armor Holdings, Inc., 2007 SEC No-Act. LEXIS 430 (April 3, 2007) ("*Armor Holdings*"); Aquila, Inc., 2006 SEC No-Act. LEXIS 296 (March 2, 2006) ("*Aquila*").

Earlier, in 1998, the SEC agreed with both RJR Nabisco Holdings Corp. and PepsiCo, Inc. that proposals that requested the preparation of a report regarding the "use of non-racist portrayals and designations" in advertisements were excludable. See RJR Nabisco Holdings Corp., 1998 SEC No-Act. LEXIS 316 (February 23, 1998); PepsiCo, Inc., 1998 SEC No-Act. 333 (February 23, 1998). The SEC took similar positions in 2002 when it issued two no-action letters supporting, under the ordinary business exception, decisions by Tootsie Roll Industries, Inc. and Federated Department Stores, Inc. to exclude proposals that requested that the companies "identify and disassociate from any offensive imagery to the American Indian community" in product marketing, advertising, endorsements, sponsorships and promotions. See Tootsie Roll Indus., Inc., 2002 SEC No-Act. LEXIS 80 (January 31, 2002); Federated Dep't Stores, Inc., 2002 SEC No-Act. LEXIS 530 (March 27, 2002).

However, as noted above, the SEC turned a corner in 2006 and 2007. See *Armor Holdings*; *Aquila*. The proposals, by NYCERS in *Armor Holdings* and the New York State Common Retirement Fund in *Aquila*, requested that management implement equal employment opportunity policies based on principles that prohibited discrimination on the basis of sexual orientation and gender, as the Funds' proposal does here. The SEC refused to issue no-action

letters in both of those cases.  The SEC's findings in the *Armor Holdings* (2007) and *Aquila* (2006) no-action letters rebut the SEC's findings in the 1998 and 2002 letters by refusing to exclude proposals that relate directly to a company's use of discriminatory practices.  Like the *Armor Holdings* and *Aquila* proposals, the Funds' proposal deals with avoiding discrimination on the basis of sexual orientation and gender identity, and should therefore be afforded similar treatment.

3.    **The Funds' Proposal is Identical to the Proposal in *Armor Holdings* and, Therefore, Should Receive the Same Treatment.**

While the SEC staff's refusal to issue no-action letters in *Armor Holdings* and *Aquila* in 2006 and 2007 illustrates its more recent acknowledgement that proposals involving significant social policy issues are not excludable from proxy materials, the proposal at issue in *Armor Holdings* deserves special attention. The proposal at issue in *Armor Holdings*, with only a few insignificant variations, is identical to the proposal at issue here.  The SEC's refusal to issue a no-action letter in *Armor Holdings* not only further illustrates the inconsistency with which the SEC has issued no-action letters, having issued a no-action letter to a nearly identical proposal here, but it also compels a finding that the Funds' current proposal receive the same treatment as the proposal in *Armor Holdings*.

This Court should reject the SEC's finding in the *Apache* no-action letter and properly apply the standard set forth in the 1976 and 1998 Releases, as it did in *Armor Holdings*. A stockholder proposal with significant social policy implications is not exempted as related to ordinary business operations even if the proposal directly or indirectly affects the daily activities of the corporation.   Here, it cannot be questioned that discrimination based upon sexual orientation and gender identity is a significant social policy issue nationwide.  Therefore, the

Funds' proposal does not fall within the ordinary business exception and the plaintiffs are likely to succeed on the merits of this claim.

**C.    The Funds Will Be Irreparably Harmed if Apache Is Permitted To Conduct its 2008 Annual Meeting Without Having First Performed a Supplemental Mailing of the Funds' Proposal.**

Irreparable harm occurs when "there is a continuing wrong which cannot be adequately addressed by final relief on the merits." New York Pathological and X-Ray Lab. Inc. v. Immigration and Naturalization Serv., 523 F.2d 79, 81 (2d Cir. 1975).  If Apache is not directed to do a supplemental mailing of the Funds' proposal, the Funds will lose their once-annual opportunity to communicate their concerns to other Apache stockholders and have their proposal voted on.   Courts have held that the loss of this once-a-year opportunity to communicate with other stockholders constitutes irreparable harm.  See Lovenheim v. Iroquois Brands. Ltd., 618 F.Supp. 554 (D.D.C. 1985); Dole Food Co., Inc., 795 F.Supp. at 103; New York City Employees' Ret. Sys. v. American Brands. Inc., 634 F.Supp. 1382 (S.D.N.Y. 1980). No remedies other than the preliminary relief sought here will suffice to make the Funds whole because no other remedy will vindicate plaintiffs' statutory right as a stockholder to express their voice on a major social policy issue of concern to all other owners of Apache stock.  Final relief on the merits, which would come after the 2008 Annual Meeting, could not redress this wrong.

Furthermore, a balancing of the hardships tips decidedly in plaintiffs' favor.  As Apache has already mailed its proxy solicitation materials for proposals under consideration at its 2008 Annual Meeting, preliminary relief would entail nothing more than a supplemental mailing of proxy materials to include only the Funds' proposal.  The extent of harm to Apache should this relief be ordered would amount to a mere inconvenience.  On the other hand, again, the effect upon the Funds should preliminary relief not be granted would be irreparable harm, as discussed above.

Courts have previously ordered and presided over supplemental mailings. See Am. Brands, 634 F.Supp. at 1392-1393 ("Plaintiff's motion for a preliminary injunction is granted. Brands is enjoined from soliciting shareholder proxies for defendant's 1986 annual meeting without informing shareholders of plaintiff's shareholder proposal; is enjoined from employing proxies solicited in such a manner; and is further directed to make a supplemental mailing to inform shareholders about, and to solicit proxies on, the plaintiff's shareholder proposal"); see also Roosevelt, 958 F. 2d 416; Howell v. Mgmt. Assistance, Inc., 519 F. Supp. 83 (S.D.N.Y. 1981).    Accordingly, a temporary restraining order and preliminary injunction should be granted enjoining Apache from soliciting stockholder proxies for its 2008 Annual Meeting without informing its stockholders of the Funds' shareholder proposal, enjoining Apache from employing proxies solicited in such a manner, and further directing Apache to make a supplemental mailing to inform its stockholders about, and to solicit proxies on, the Funds' shareholder proposal.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully requests that this Court issue a temporary restraining order and a preliminary injunction enjoining Apache from soliciting stockholder proxies for its 2008 Annual Meeting without informing its stockholders of the Funds' shareholder proposal, enjoining Apache from employing proxies solicited in such a manner, and further directing Apache to make a supplemental mailing to inform its stockholders about, and to solicit proxies on, the Funds' shareholder proposal.

Dated:        New York, New York
              April 8, 2008

                              MICHAEL A. CARDOZO
                              Corporation Counsel of the
                                City of New York
                              Attorney for Plaintiffs
                              100 Church Street, Room 5-149
                              New York, New York 10007
                              (212) 788-0989

                    By:       _____
                              Jeremy I. Huntone (JH 8425)
                              Assistant Corporation Counsel


Of Counsel:
        Inga Van Eysden
        Karen J. Seemen
        Jeremy I. Huntone