**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM; THE NEW YORK CITY TEACHERS' RETIREMENT SYSTEM; THE NEW YORK CITY POLICE PENSION FUND; THE NEW YORK CITY FIRE DEPARTMENT PENSION FUND; THE NEW YORK CITY BOARD OF EDUCATION RETIREMENT SYSTEM; AND, THE OFFICE OF THE COMPTROLLER OF THE CITY OF NEW YORK, <br><br> Plaintiffs, <br><br> v. <br><br> APACHE CORPORATION, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 08- 3458 (CM) |

**OPPOSITION OF APACHE CORPORATION TO**
**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Reid M. Figel (SDNY RF 8663)
Kevin B. Huff (SDNY KH 9284)
W. David Sarratt (SDNY WS 1439)
KELLOGG, HUBER, HANSEN,
   TODD, EVANS & FIGEL, PLLC
1615 M. Street, NW, Suite 400
Washington, DC 20036-3209
(202) 326-7900
(202) 326-7999 (facsimile)

April 14, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION AND SUMMARY ..................................................................1

BACKGROUND .................................................................................................3

    A.  The NYC Funds' Proposal............................................................................4

    B.  Apache Seeks a No-Action Letter from the SEC, and the SEC Grants the
        Requested Relief.........................................................................................5

    C.  The NYC Funds Remain Silent for a Month, While Apache Mails Its Proxy
        Materials in Accordance with the SEC's Guidance............................................6

ARGUMENT ......................................................................................................7

I.     The NYC Funds Cannot Demonstrate a Clear Or Substantial Likelihood of
       Success on the Merits.....................................................................................8

    A.  The "Ordinary Business" Exclusion ..............................................................9

    B.  A Consistent Pattern of No-Action Letters Issued by the SEC Staff Permit the
        Exclusion of the NYC Funds' Proposal..........................................................12

    C.  The SEC Staff's Denial of No-Action Relief in *Armor Holdings* and *Aquila* Do
        Not Upset This Settled Interpretation ............................................................19

II.    The Balance of Harms Tips in Apache's Favor................................................21

CONCLUSION..................................................................................................25

# TABLE OF AUTHORITIES

CASES

*Acquaire v. Canada Dry Bottling Co. of New York*, 24 F.3d 401 (2d Cir. 1994)..............................8

*Amalgamated Clothing and Textile Workers Union v. Wal-Mart Stores, Inc.*, 821 F. Supp. 877 (S.D.N.Y. 1993)..................................................................................................9

*Auer v. Robbins*, 519 U.S. 452 (1997) .......................................................................................9

*Austin v. Consolidated Edison Co.*, 788 F. Supp. 192 (S.D.N.Y. 1992) .......................................10

*Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945)............................................................9

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006).........................................................3

*Factors Etc., Inc. v. Pro Arts. Inc.*, 579 F.2d 215 (2d Cir. 1978) ................................................3

*First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76 (2d Cir. 1989) ....................................3

*Grimes v. Centerior Energy Corp.*, 909 F.2d 529, 531 (D.C. Cir. 1990 .......................................10

*Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005)........................................7

*Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.*, 804 F.2d 16 (2d Cir.1986).................................................................................................................3

*New York City Employees' Retirement System v. Brunswick Corp.* 789 F. Supp. 144 (S.D.N.Y. 1992) ...............................................................................................................10

*New York City Employees' Retirement Sys. v. Dole Food Co.*, 969 F.2d 1430 (2d Cir. 1992) ...............................................................................................................................8

*Peck v. Greyhound Corp.*, 97 F. Supp. 679 (S.D.N.Y. 1951).........................................................9

*Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416 (D.C. Cir. 1992) .......................15, 16

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27 (2d Cir. 1995)..............................7, 8

STATUTES

17 C.F.R. § 240.14a-8(i)(7) ............................................................................................ *passim*

28 U.S.C. 1404(a) ........................................................................................................................3

## OTHER AUTHORITIES

*American Express Company*, SEC No-Action Letter, 1990 WL 285876 (Jan. 25, 1990)............16

*Anheuser-Busch*, SEC No-Action Letter, 2000 WL 124206 (Jan. 21, 2000) ........................15, 16

*Aquila, Inc.*, SEC No-Action Letter, 2006 WL 568662 (Mar. 2, 2006) ...................................19, 21

*Armor Holdings Inc.*, SEC No-Action Letter, 2007 WL 1152669 (Apr. 3, 2007) ..................19, 20

*Associates First Capital*, SEC No-Action Letter, 1999 WL 95468 (Feb. 23, 1999)......................12

*AT&T Corp.*, SEC No-Action Letter, 2005 WL 517879 (Feb. 25, 2005) ....................12, 13,14, 16

*The Boeing Company*, SEC No-Action Letter, 2001 WL 118860 (Feb. 7, 2001)....................14, 16

*E\*Trade Group, Inc.*, SEC No-Action Letter, 2000 WL 1671431 (Oct. 31, 2000) ......................12

Exchange Act Release No. 34-40018, *Amendments to the Rules on Shareholder Proposals*, 1998 WL 254809 (SEC May 21, 1998).....................................................10, 11

*Federated Department Stores, Inc.*, SEC No-Action Letter, 2002 WL 975596 (Mar. 27, 2002). ........................................................................................................................17

*General Mills, Inc.*, SEC No-Action Letter, 1990 WL 286639 (June 20, 1990).....................14, 16

*IBM Corporation*, SEC No-Action Letter, 1992 WL 11459 (Jan. 23, 1992) .................................14

*JP Morgan Chase*, SEC No-Action Letter, 2006 WL 452350 (Feb. 22, 2006)............................12

*Kellogg Company*, SEC No-Action Letter, 1989 WL 245747 (Feb. 3, 1989)...............................15

*Keystone Financial Inc. ( re Quaker Oats)*, SEC No-Action Letter, 1999 WL 152450 (Mar. 16, 1999)  15

*Loews Corporation*, SEC No-Action Letter, 2006 WL 760438 (Mar. 22, 2006).........................20

*Morgan Stanley*, SEC No-Action Letter, 2002 WL 31875213 (Dec. 23, 2002).......................18, 19

NYC Funds Press Release, *Thompson and NYC Pension Funds: SEC Wrong To Let Company Snub Anti-Discrimination Measure*, available at http://www.comptroller.nyc.gov/press/2008_releases/pr08-04-035.shtm ........................................7

*PepsiCo*, SEC No-Action Letter, 1998 WL 92657 (Feb. 23, 1998) ...............................................15

*SBC Communications Inc.*, SEC No-Action Letter, 2004 WL 51823 (Jan. 9, 2004)..............14, 16

*T. Rowe Price Group, Inc.*, SEC No-Action Letter, 2002 WL 31890967 (Dec. 27, 2002)...........18

*Wal-Mart Stores*, SEC No-Action Letter, 2001 WL 253625 (Mar. 9, 2001) ...............................16

*Walgreen Co.*, SEC No-Action Letter, 2006 WL 3207898 (Oct. 20, 2006).................................18

*The Walt Disney Company*, SEC No-Action Letter, 2006 WL 3436486 (Nov. 22, 2006)......12, 15

*Wells Fargo, Inc.*, SEC No-Action Letter, 2007 WL 490943 (Feb. 12, 2007).............................18

Defendant Apache Corporation ("Apache") respectfully submits this opposition to the request for a preliminary injunction by Plaintiffs the New York City Employees' Retirement System, The New York City Teachers' Retirement System, the New York City Police Pension Fund, the New York City Fire Department Pension Fund, the New York City Board of Education Retirement System, and (on their behalf) the Office of the Comptroller of the City of New York (collectively, the "NYC Funds").

## INTRODUCTION AND SUMMARY

This dispute concerns the NYC Funds' improper attempt to compel Apache to include a shareholder proposal in its proxy materials that "relate[s] to Apache's ordinary business operations," Ex. 1[1] — despite the fact that, as the Securities and Exchange Commission ("SEC") has found in a no-action letter, Apache's exclusion of the proposal was proper under the SEC's Rule 14a-8(i)(7), 17 C.F.R. § 240.14a-8(i)(7). The proposal directs Apache to consider "sexual orientation and gender identity" in the "allocation of employee benefits," "corporate advertising and marketing," "sale of goods and services," and "charitable contributions." Ex. 2 (the "Proposal").[2] The NYC Funds has submitted 24 *identical* such proposals to publicly-traded corporations in the United States in 2008. However well-intentioned, the Proposal improperly seeks to address Apache's ordinary business operations, which involve complex and sensitive issues, without any consideration of the unusual complexities and business judgments that apply

---

[1] *Apache Corporation*, SEC No-Action Letter (Mar. 5, 2008) ("Apache No-Action Letter"), attached at Sarratt Decl. Ex. 1.

All references to Exhibits or Ex. herein refer to the Exhibits to the Declaration of W. David Sarratt In Support of Opposition of Apache Corporation to Plaintiffs' Motion for a Preliminary Injunction, accompanying this Opposition at Tab A.

[2] Letter from P. Doherty, City of New York, Office of the Comptroller, to C. Peper, Corporate Secretary, Apache Corporation (dated Oct. 29, 2007) ("Proposal"), attached at Sarratt Decl. Ex. 2.

to Apache's global operations. Fashioning and implementing policies to address matters that must be appropriately tailored to Apache's global business operations is not appropriate for shareholder determination under the SEC's rules.

In fact, the SEC has repeatedly concluded — in directly analogous contexts — that proposals addressed to these difficult managerial judgments may be omitted under Rule 14a-8(i)(7) because they impermissibly intrude on a company's ordinary business operations. And because the dispute here is one that the Court must decide based on the SEC's regulations, the SEC's longstanding judgment on this issue (which the Commission has applied evenhandedly regardless of whether the proposal seeks to expand or diminish the rights of any particular group) should be controlling. Because both the SEC and Apache have considered and concluded that Apache may exclude the Proposal from its proxy materials, the NYC Funds cannot demonstrate the strong likelihood of success necessary to obtain preliminary or permanent equitable relief.

Moreover, the NYC Funds are seeking a *mandatory* injunction — an extraordinary equitable remedy — requiring, among other things, Apache to reschedule or postpone its annual shareholders meeting or circulate a new proxy to distribute the Proposal. Apache has already circulated its proxy materials and did so in reliance on the NYC Funds' unreasonable delay in seeking relief from this Court. The NYC Funds demanded that Apache include the Proposal in the proxy. Apache declined and obtained guidance from the SEC that it was not required to do so. After receiving the SEC's no-action letter on March 5, 2008, Apache mailed its proxy materials, without the Proposal, on March 31, 2008. Yet during all that time, the NYC Funds sat on the sidelines and did not seek relief from this Court. Rather, the NYC Funds waited until after Apache had sent its proxy, at the expense of several hundred thousand dollars, to seek "emergency" relief from this Court. The NYC Funds, having waited to file this action until April

9 — less than a month before Apache's long-scheduled May 8 annual meeting — are in no

position now to demand equitable relief on an emergency basis. Had the NYC Funds challenged

Apache's decision to exclude the proposal on a timely basis, and prevailed, Apache could have

included the Proposal. Instead, and perhaps by design, the NYC Funds delayed seeking review

of Apache's decision until the point where the grant of any judicial relief will impose significant

and avoidable reputational harm to Apache.

This afternoon at 4:00 p.m. EDT, Judge Miller of the United States District Court for the

Southern District of Texas convened a hearing on Apache's motion for a preliminary injunction

in civil action No. 4:08-1064. At the time of this filing, that hearing was not concluded. Apache

will provide the Court, by letter, with an update of those proceedings as soon as practicable.

The application for a preliminary injunction should be denied.[3]

---

3 Apache's Opposition to Plaintiffs' Motion for a Preliminary Injunction is filed subject to and without waiving Apache's right to brief and argue a motion to stay, transfer or dismiss this action under the "first to file" rule, or to transfer venue to the Southern District of Texas pursuant to 28 U.S.C. 1404(a). It will not be known whether any such motion is necessary until after the hearing in the Southern District of Texas, which is scheduled to begin only an hour before the deadline for filing this Opposition.

In short, and as Apache argued at the hearing on April 9, 2008, it is "well-settled . . . in this Circuit that where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." *See, e.g.*, *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (internal quotation marks and alterations omitted); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006) (same).

Although the Second Circuit has noted that "[w]hen [a first-filed] declaratory judgment action has been triggered by a notice letter, this equitable consideration may be *a factor* in the decision to allow the later filed action to proceed to judgment in the plaintiffs' chosen forum," *Factors Etc., Inc. v. Pro Arts. Inc.*, 579 F.2d 215, 219 (2d Cir. 1978) (emphasis added), that consideration is by no means dispositive. Indeed, "the balance of convenience in this matter weighs overwhelmingly in favor of the [Texas] action," as this action has "absolutely no ties to the Southern District of New York," other than the fact that certain shareholders happen to reside there. *Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir.1986) (considering balance of convenience in applying first to file rule). Apache's headquarters is in Texas; the proposal was sent to Apache in Texas; the challenged shareholders' meeting is in Texas; and the effect of any injunction would be felt in Texas. Moreover, Plaintiffs

## BACKGROUND

Apache is an independent energy company that explores for, develops, and produces natural gas and crude oil on five continents. Apache is (and has long been) committed to equal opportunity for all people. Its corporate polices are carefully-crafted and designed to prevent discrimination against all people, thereby allowing the company to conduct its operations with sensitivity and respect for the wide range of religions, cultures, and social norms in the diverse countries where it does business. Indeed, there is no allegation by the Funds that Apache's existing policies have resulted in any discrimination based on sexual orientation or gender identity. In this case, Apache properly availed itself of the standard SEC-approved procedures available to a corporation that believes a shareholder proposal should be omitted from its proxy materials. These procedures are designed to allow the SEC — the expert agency charged with interpreting and enforcing the controlling regulation — a chance to pass on whether a shareholder proposal is properly excluded. Only after the SEC agreed with Apache did Apache omit the Proposal.

**A.    The NYC Funds' Proposal**

On October 29, 2007, the NYC Comptroller sent Apache (and dozens of other leading United States corporations about that time) a letter on behalf of the NYC Funds, stating that "[t]he funds' boards of trustees have authorized the Comptroller to inform you of their intention to offer the enclosed proposal for consideration of stockholders at the next annual meeting." Ex. 2, Cover Letter at 1. The NYC Comptroller submitted the Proposal, purportedly "in accordance with Rule 14a-8 of the Securities Exchange Act of 1934," and "ask[ed] that it be included in

---

were aware that a duplicative case was pending in the Southern District of Texas when they filed this action. For these reasons, there are no special circumstances that justify adjudication of this matter in New York rather than in Texas.

[Apache's] proxy statement." *Id.* The NYC Comptroller described the Proposal as asking Apache "to include a prohibition against discrimination based on sexual orientation in its employee policy statement." *Id.* The Proposal, however, goes far beyond requesting that Apache merely amend its employment discrimination policy to expressly prohibit discrimination based on sexual orientation; in addition, it asks Apache to significantly alter the way it conducts its day-to-day business activities. Among other things, the Proposal seeks to require Apache to institute polices to ensure that its decisions about "corporate advertising," "marketing policy," "sale of goods and services," "corporate charitable contributions," and "allocation of employee benefits," do not result in discrimination based on sexual orientation or gender identity. *Id.*, Proposal at 1-2. Apache concluded that this Proposal sought to impermissibly interfere with its "ordinary business operations," and took steps to obtain SEC interpretive guidance, pursuant to established procedures, in order to omit the Proposal from the proxy materials sent to shareholders in connection with Apache's 2008 shareholders' meeting.

**B.     Apache Seeks a No-Action Letter from the SEC, and the SEC Grants the Requested Relief**

On January 3, 2008, Apache forwarded the NYC Comptroller's October 29, 2007 letter to the SEC's Division of Corporation Finance and asked that it "confirm that it will not recommend any enforcement action to the [SEC] if, in reliance on the Company's analysis set forth below, the Company excludes the [NYC Funds'] Proposal from its proxy materials." Ex. 3,[4] at 1. In its letter to the SEC, Apache explained that Rule 14a-8(i)(7)'s "ordinary business" exception permits a company to exclude from its proxy materials any shareholder proposal that relates to ordinary business matters. *Id.* at 2-3. Based on previous no-action letters by the SEC involving

_____

[4] Letter from S. Teslik, Sr. Vice-Pres. Policy and Governance, Apache Corporation, to Office of Chief Counsel, Div. of Corp. Finance, SEC (dated January 3, 2008), attached at Sarratt Decl. Ex. 3.

similar proposals, Apache explained that:

> Here, the Proposal does not simply request that the Company amend its equal employment opportunity policy to explicitly exclude reference to gender or sexual orientation. Instead, it seeks to have the Company implement a number of principles, several of which relate to *core ordinary business matters, including the Company's corporate advertising policy, the Company's marketing policies, how the Company sells its products and the Company's charitable giving practices.* Because the Proposal impermissibly delves into ordinary business matters, it may be excluded in reliance on Rule 14a-8(i)(7).

*Id.* at 3 (emphasis added).

On February 1, 2008, the NYC Comptroller's office, on behalf of the NYC Funds, responded to Apache's letter, arguing that the Proposal should not be excluded from Apache's proxy statement based on Rule 14a-8(i)(7)'s "ordinary business" exception, and asked that the SEC deny Apache's "request for 'no-action' relief." Ex. 4[5] at 5.

On March 5, 2008, after submission of further correspondence from both Apache and the NYC Funds, the SEC's Division of Corporation Finance rejected the NYC Funds' position and issued a "no-action" letter. The SEC's Division of Corporation Finance explained:

> There appears to be some basis for [Apache's] view that Apache may exclude the proposal under rule 14a-8(i)(7). We note in particular that some of the principles relate to Apache's ordinary business operations. Accordingly, we will not recommend enforcement action to the Commission if Apache omits the proposal from its proxy materials in reliance on rule 14a-8(i)(7).

Ex. 1.

## C.  The NYC Funds Remain Silent For a Month, While Apache Mails Its Proxy Materials in Accordance With the SEC's Guidance

The NYC Funds have known since at least January 3, 2008, that Apache's annual meeting of shareholders would be held on May 8, 2008, and further have known that Apache's

---

[5] Letter from J. Silberstein, Assoc. Gen'l Counsel, City of New York, Office of the Comptroller, General Counsel to SEC, Div. of Corp. Finance, Office of Chief Counsel (dated Feb. 1, 2008), attached at Sarratt Decl. Ex. 4.

proxy statement on Schedule 14A would be filed on or about March 31, 2008. Yet for approximately four weeks after the SEC issued its "no-action" letter, there was no further word from the NYC Funds on this matter. Accordingly, on March 31, Apache printed and distributed its proxy materials, at a cost of several hundred thousand dollars. Ex. 6, Affidavit of Robert J. Dye ¶ 10.

On April 4, 2008, the NYC Comptroller issued a press release saying that "the New York City Pension Funds . . . are now exploring legal options such as appealing the SEC Staff decision to the full Commission and/or filing a lawsuit against Apache." NYC Funds Press Release, *Thompson and NYC Pension Funds: SEC Wrong To Let Company Snub Anti-Discrimination Measure*, available at http://www.comptroller.nyc.gov/press/2008_releases/pr08-04-035.shtm. Still, the NYC Funds waited until April 9 to file this action, despite that Apache had already filed — with the NYC Funds' knowledge — a suit in Texas raising precisely the same issues.

Apache's annual shareholder meeting is scheduled for May 8, 2008, in Houston, Texas.

## **ARGUMENT**

In considering an application for a preliminary injunction, courts in the Second Circuit typically consider whether the party seeking relief has established "(a) that it will suffer irreparable harm in the absence of an injunction and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33 (2d Cir. 1995).

But where, as here, "the movant seeks a mandatory injunction (one that will alter the status quo) rather than a prohibitory injunction (one that maintains the status quo), the likelihood-of-success standard is elevated: the movant must show a clear or substantial

likelihood of success." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 97 (2d Cir. 2005). A "heightened standard" is further justified here because, given that Apache's annual meeting is to be held on May 8, "the issuance of an injunction will render a trial on the merits largely or partly meaningless." *Tom Doherty Assoc.*, 60 F.3d at 35. If the Court enters a preliminary injunction, Apache will presumably be obliged to comply by issuing a supplemental mailing or postponing its annual meeting, which will moot the case. *See New York City Employees' Retirement Sys. v. Dole Food Co.*, 969 F.2d 1430, 1433 (2d Cir. 1992). Therefore, the NYC Funds must "meet the higher standard of [a] substantial, or clear showing, of likelihood of success," *Tom Doherty Assoc.*, 60 F.3d at 35, as well as demonstrate (as the NYC Funds acknowledge) that the "balance of hardships tip[s] decidedly" in their favor. NYC Funds Br.[6] at 10 (citing *Acquaire v. Canada Dry Bottling Co. of New York*, 24 F.3d 401, 409 (2d Cir. 1994)). As set forth below, the NYC Funds cannot satisfy their burden. The application for a preliminary injunction should be denied.

## I.    The NYC Funds Cannot Demonstrate A Clear Or Substantial Likelihood Of Success On the Merits

Under SEC Rule 14a-8(i)(7), a shareholder proposal may be excluded from a company's proxy mailing "[i]f the proposal deals with a matter relating to the company's ordinary business operations." 17 C.F.R. § 240.14a-8(i)(7). In issuing its no-action letter to Apache in this matter, the SEC staff agreed that the NYC Funds' proposal could be excluded under Rule 14a-8(i)(7), and "note[d] in particular that some of the principles [in the NYC Funds' Proposal] related to Apache's ordinary business operations." Apache No-Action Letter at 1. The SEC Staff's determination is supported by a long line of SEC precedents applying Rule 14a-8(i)(7), and

---

[6] Memorandum of Law in Support of Plaintiffs' Motion for a Temporary Restraining Order and a Preliminary Injunction (filed Apr. 8, 2008) ("NYC Funds Br.").

should be given dispositive weight in concluding that the NYC Funds have failed to demonstrate the "clear or substantial likelihood of success" necessary to the award of extraordinary equitable relief.

The Proposal plainly impinges on numerous aspects of Apache's ordinary business operations. It would require that Apache's "management implement equal opportunity policies based on the *aforementioned principles* prohibiting discrimination based on sexual orientation and gender identity." Ex. 2- Proposal at 2 (emphasis added). Those "aforementioned principles" seek to modify Apache's ordinary business operations by imposing an additional layer of analysis — a focused determination of potential impact on issues related to sexual orientation and gender identity — for every decision involving Apache's *"allocation of employee benefits," "corporate advertising," "advertising and marketing," "sale of goods and services," and "charitable contributions." Id.* (emphasis added). These activities are at the heart of Apache's day-to-day business operations and fall squarely within the scope of Rule 14a-8(i)(7).

## A.    The "Ordinary Business" Exclusion

It is fundamental that in the "interpretation of an administrative regulation a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt. . . . [T]he administrative interpretation . . . becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413-14 (1945); *see also Auer v. Robbins*, 519 U.S. 452, 461-62 (1997). In this context, "[n]o-action letters can provide insight into the meaning of 'ordinary business operations' because, unlike general interpretive releases, no-action letters address specific issues and build upon the SEC's 'vast experience of daily contact with the practical workings of this rule.'" *Amalgamated Clothing and Textile Workers Union v. Wal-Mart Stores, Inc.*, 821 F. Supp.

9

877, 884 (S.D.N.Y. 1993) (quoting *Peck v. Greyhound Corp.*, 97 F. Supp. 679, 681 (S.D.N.Y. 1951)). Even though individual no-action letters are not binding on the court, they are instructive in applying Rule 14a-8(i)(7). And "courts have relied on the consistency of the SEC staffs position and reasoning on a given issue, or the lack of consistency, in determining whether a proposal that was deemed excludable by the SEC staff can in fact be omitted under Rule 14a-8(c)(7)." *Id.* at 885. For example, in following the SEC staff's no-action determination based on Rule 14a-8(i)(7) in *New York City Employees' Retirement System v. Brunswick Corp.*, the court stated that the SEC had issued five no-action letters on similar proposals and concluded that it "should defer to the SEC's interpretation of its Rule." 789 F. Supp. 144, 147 (S.D.N.Y. 1992). *See also Austin v. Consolidated Edison Co.*, 788 F. Supp. 192, 195 (S.D.N.Y. 1992) (following SEC staff's no-action determination based upon Rule 14a-8(i)(7) and stating "[t]he SEC's application of its own regulations, particularly when those regulations have the force of law, certainly deserve some deference.").

The purpose of Rule 14a-8(i)(7) "is to limit the shareholders from seeking to 'assert the power to dictate the minutiae of daily business decisions.'" *Brunswick Corp.*, 789 F. Supp. at 146-47 (quoting *Grimes v. Centerior Energy Corp.*, 909 F.2d 529, 531 (D.C. Cir. 1990)). As the SEC has explained, the term "ordinary business" "refers to matters that are not necessarily 'ordinary' in the common meaning of the word, and is rooted in the corporate law concept providing management with flexibility in directing certain core matters involving the company's business and operations." Exchange Act Release No. 34-40018, *Amendments to the Rules on Shareholder Proposals*, 1998 WL 254809 (SEC May 21, 1998) ("1998 Release"). Thus, Rule 14a-8(i)(7) "gives recognition to the principle of corporate law that management of the business of a corporation is vested in its Board of Directors," *Brunswick Corp.*, 789 F. Supp. at 146-47,

and mirrors the well-established principle of state law (in Delaware and elsewhere) "confin[ing]

the resolution of ordinary business problems to management and the board of directors, since it is

impracticable for shareholders to decide how to solve such problems at an annual shareholders

meeting." 1998 Release, 1998 WL 254809, at *4. The policy underlying the ordinary business

exclusion rests on two central considerations.

The <u>first</u> consideration is whether the proposal relates to tasks that are so fundamental to

management's ability to run a company that they could not, as a practical matter, be subject to

direct shareholder oversight. *See id.* As the SEC has explained,

> Certain tasks are so fundamental to management's ability to run a company on a day-to-day basis that they could not, as a practical matter, be subject to direct shareholder oversight. Examples include the management of the workforce, such as the hiring, promotion, and termination of employees, decisions on production quality and quantity, and the retention of suppliers. However, proposals relating to such matters but focusing on sufficiently significant social policy issues (e.g., significant discrimination matters) generally would not be considered to be excludable, because the proposals would transcend the day-to-day business matters and raise policy issues so significant that it would be appropriate for a shareholder vote.

*Id.* Contrary to the NYC Funds' position, and as detailed below, the SEC has made clear that *not*

*all* proposals that address "social policy issues" automatically fall outside the ordinary business

exclusion: there is "no bright-line test to determine when employment-related shareholder

proposals raising social issues fall within the scope of the 'ordinary business' exclusion." *Id.*

Rather, the SEC has entrusted the staff to make "reasoned distinctions," as the staff did here, "in

deciding whether to furnish 'no-action' relief." *Id.*

The <u>second</u> consideration is the degree to which the proposal attempts to micro-manage a

company by probing too deeply into matters of a complex nature upon which shareholders would

not be in a position to make an informed judgment. *See id.* at *5. As the SEC has explained,

"[t]his consideration may come into play in a number of circumstances, such as where the

11

proposal involves intricate detail, or seeks to impose specific time-frames *or methods for implementing complex policies*." *Id*. (emphasis added).

Both considerations support the SEC staff's no-action determination that the NYC Funds' Proposal intrudes into "Apache's ordinary business operations." *See* Apache No-Action Letter.

## B.    A Consistent Pattern of No-Action Letters Issued by the SEC Staff Permit the Exclusion of the NYC Funds' Proposal

The SEC has applied the "ordinary business" exclusion hundreds (if not thousands) of times to proposals addressed to employment and discrimination issues, and a clear line of decision emerges from the Commission's work.  In one category of no-action letters, the SEC staff has refused to apply the "ordinary business operations" exclusion to shareholder proposals that focus on and are limited to employment discrimination generally, on the ground that they raise significant social policy issues, *see, e.g., JP Morgan Chase*, SEC No-Action Letter, 2006 WL 452350 (Feb. 22, 2006) (a proposal that Chase amend its written equal employment opportunity policy to explicitly encompass sexual orientation).  The NYC Funds' Proposal does not fit within this category.

Instead, the Proposal falls squarely into the second category, where the SEC staff consistently has allowed the exclusion of proposals that cannot be subject to shareholder oversight because they impermissibly intrude into corporate operations, *even though (at a higher level of generality) significant social policy issues may be involved.  See, e.g., The Walt Disney Company*, SEC No-Action Letter, 2006 WL 3436486 (Nov. 22, 2006) (permitting exclusion of a proposal that Disney report on the steps taken to avoid negative racial, ethnic, and gender stereotypes in its products); *AT&T Corp.*, SEC No-Action Letter, 2005 WL 517879 (Feb. 25, 2005) (permitting exclusion of a proposal that AT&T consider discontinuing domestic partner benefits for executives making over $500,000 per year); *Associates First Capital*, SEC No-

Action Letter, 1999 WL 95468 (Feb. 23, 1999) (permitting exclusion of a proposal regarding predatory lending practices); *see also E\*Trade Group, Inc.*, SEC No-Action Letter, 2000 WL 1671431, \*1 (Oct. 31, 2000) (permitting exclusion of a proposal to increase shareholder value, where the SEC staff stated that "although the proposal appears to address matters outside the scope of ordinary business, subparts 'c.' and 'd.' relate to E\*Trade's ordinary business operations.").

Although the NYC Funds attempt to characterize their Proposal as simply one to prohibit sexual orientation and gender identity discrimination, the plain language of the Proposal demonstrates that it goes far beyond that goal. The request for an express statement prohibiting sexual orientation and gender identity discrimination as a matter of policy is only one of the ten principles set forth in the proposal. In fact, many of the remaining principles are directed to Apache's ordinary business operations and provide clear grounds to exclude the proposal from Apache's proxy materials. Specifically, the fourth principle states that "[t]here shall be no discrimination in the allocation of employee benefits on the basis of sexual orientation or gender identity." The seventh and eighth principles of the Proposal direct the company to avoid the use of negative stereotypes based on sexual orientation or gender identity in "[c]orporate advertising policy," and to prohibit discrimination in corporate advertising and marketing policy based on sexual orientation or gender identity. The ninth principle is directed to "discrimination in the sale of goods and services based on sexual orientation or gender identity," and the tenth principle deals with "corporate charitable contributions." Each of these provides a basis for excluding the proposal in its entirety from the company's proxy materials in reliance on Rule 14a-8(i)(7).

**1.** With respect to the fourth principle, regarding the allocation of employee benefits, the SEC staff consistently has rejected proposals relating to benefits that address gender identity and

sexual orientation. For example, in the *AT&T* no-action letter, cited above, the SEC supported the decision to exclude a proposal that sought to discontinue all domestic partner benefits for executives making over $500,000 per year. The SEC staff agreed with AT&T that the proposal interfered with its "ordinary business operations," noting that "the thrust and focus of the proposal is on the ordinary business matter of employee benefits." *AT&T*, 2005 WL 517879, at *1. A year earlier, in *SBC Communications Inc.*, SEC No-Action Letter, 2004 WL 51823 (Jan. 9, 2004), the SEC supported the decision to exclude a proposal to deprive unmarried sexual partners of employees benefits available under SBC's health care plans, because the proposal "relat[ed] to SBC's ordinary business operations (i.e., employee benefits)." *Id.* *2; *see also The Boeing Company*, SEC No-Action Letter, 2001 WL 118860 (Feb. 7, 2001) (permitting exclusion, pursuant to Rule 14a-8(i)(7), of a proposal directing the board of directors to rescind the decision to make certain benefits available to same-sex domestic partners of Boeing employees and refrain from adopting any similar change in policy without first securing shareholder consent). Similarly, with respect to IBM Corporation's request for no-action relief, the Commission allowed IBM to exclude, as intruding on ordinary business matters, a proposal to provide spousal-type benefits to "committed domestic partners" of gay and lesbian employees of the Company. *IBM Corporation*, SEC No-Action Letter, 1992 WL 11459, at *1 (Jan. 23, 1992).

2. With respect to the seventh and eighth principles, the SEC staff has long held that decisions relating to how a company advertises and markets its products relate to ordinary business matters. *See, e.g., General Mills, Inc.*, SEC No-Action Letter, 1990 WL 286639 (June 20, 1990) (granting relief under Rule 14a-(c)(7) [the predecessor to Rule 14a-8(i)(7)] with respect to a proposal that sought to prohibit General Mills from advertising on programs that encouraged homosexuality or pornography). The SEC staff has taken this position even where

the proposal (at a higher level of generality) relates to an overarching social policy matter, such as the use of racial, ethnic and gender stereotypes in a company's advertising and marketing practices. For example, in 2007, the SEC staff agreed with The Walt Disney Company that it could rely on Rule 14a-8(i)(7) to exclude from its proxy materials a shareholder proposal that requested a report on the steps that Disney was undertaking to avoid the use of negative racial, ethnic and gender stereotypes in its products. Despite the fact that matters relating to discrimination based on racial, ethnic or gender raise significant policy considerations, the SEC staff concluded that the action sought by the proposal related to the nature, presentation and content of its products, all of which were ordinary business matters.

The SEC staff's response to The Walt Disney Company is consistent with prior no-action letters. *See, e.g., Anheuser-Busch*, SEC No-Action Letter, 2000 WL 124206, at *1 (Jan. 21, 2000) (permitting exclusion under Rule 14a-8(i)(7) of a proposal that the company report its use of advertisements that do not "offend the sexual sensibilities of heterosexual persons"); *PepsiCo*, SEC No-Action Letter, 1998 WL 92657, at *1 (Feb. 23, 1998) (permitting exclusion under Rule 14a-8(i)(7) of a proposal that the company ensure that it only used "non-racist portrayals and designations" in its operations); *Keystone Financial Inc. (re Quaker Oats)*, SEC No-Action Letter, 1999 WL 152450 (Mar. 16, 1999) (permitting exclusion under Rule 14a-8(i)(7) of a proposal that requested that the company review its advertising content for anything that demeaned or slandered anyone based on race, ethnicity or religion); *Kellogg Company*, SEC No-Action Letter, 1989 WL 245747, *5 (Feb. 3, 1989) (permitting exclusion under Rule 14a-8(i)(7) of a proposal that requested that the company implement a policy to ensure that its advertisements present in a non-prejudicial manner "any members of groups victimized by hate crimes, including racial, religious and ethnic minorities as well as lesbians and gay men"); *see*

15

*also Roosevelt v. E.I. Du Pont de Nemours & Co.,* 958 F.2d 416, 428-29 (D.C. Cir. 1992)

(agreeing with SEC that shareholder proposal to require Du Pont to have a marketing plan to sell

environmentally safe alternatives to chlorofluorocarbons ["CFCs"] was properly excluded under

the ordinary business exclusion). Plainly when the SEC made these determinations, the "sexual

sensibilities of heterosexual persons," the use of racist portrayals or racial slurs, and the release

of CFCs were issues that might be characterized as concerning social policy. But in purporting

to direct the companies' marketing programs, the proposals intruded on matters of ordinary

business operations, and hence were properly excluded under Rule 14a-8(i)(7).

Moreover, *Anheuser-Busch* and *General Mills* (as well as *AT&T*, *SBC*, and *Boeing* cited

above in the employee benefits context) highlight the fact that proposals concerning hot-button

issues can come from all points on the ideological spectrum. Although the NYC Funds are

pursuing an activist shareholder strategy intended to combat discrimination based on sexual

orientation and gender identity, the interpretation of Rule 14a-8(i)(7) advanced by the NYC

Funds (which conflicts directly with the SEC's position) would require companies to include

analogous shareholder proposals from all points of view. It is precisely for this reason that the

SEC has permitted corporations such as Apache to exclude all shareholder proposals that seek to

address ordinary business decisions in the guise of affecting social policy.

**3.** Similarly, the ninth principle of the Proposal directs Apache to refrain from

discriminating in the sale of goods and services based on sexual orientation or gender identity.

Like decisions relating to how a company advertises or markets its products, the SEC staff has

long held that shareholder proposals regarding how a company sells its products relate to

ordinary business matters. *See, e.g.*, *Wal-Mart Stores*, SEC No-Action Letter, 2001 WL 253625,

at *1 (Mar. 9, 2001) (granting relief under Rule 14a-8(i)(7) with regard to a proposal requesting

the company "adopt a policy which refuses to sell handguns and their accompanying ammunition, in any way"); *American Express Company*, SEC No-Action Letter, 1990 WL 285876 (Jan. 25, 1990) (granting relief under Rule 14a-8(i)(7) with regard to a proposal that the company terminate all fur promotions, excludable as relating to the promotion and sale of a particular product). This is of particular concern to Apache, which must conduct business with, and sell products to, a wide range of government entities and private companies, many of which have differing values and sensibilities. Apache remains committed to a strict policy against discrimination against any person, but the manner in which it implements that policy given the unique challenges it faces is an issue that is not appropriate for shareholder determination and instead must be entrusted to management's greater knowledge and experience.

In recognition of these concerns, the SEC staff has granted no-action relief on this basis for proposals that impact advertising and marketing decisions, even where the proposal at issue also raised social policy issues. For example, in 2002 the staff agreed with Federated Department Stores that it could rely on Rule 14a-8(i)(7) to exclude from its proxy materials a shareholder proposal that requested that the company prepare a report regarding the company's efforts to "identify and disassociate from any offensive imagery to the American Indian community" in products, advertising, endorsements, sponsorships and promotions. *Federated Department Stores, Inc.*, SEC No-Action Letter, 2002 WL 975596, at *1 (Mar. 27, 2002). Like the NYC Funds' proposal, the proposal in *Federated Department Stores* related to discrimination and stereotypes, which might otherwise preclude reliance on Rule 14a-8(i)(7). Nevertheless, consistent with its longstanding approach, the SEC staff agreed with Federated that it could exclude the proposal from its proxy materials in reliance on Rule 14a-8(i)(7) because the proposal attempted to implement the policy by delving into ordinary business matters.

**4.** The tenth principle of the NYC Funds' proposal directs Apache to refrain from barring corporate charitable contributions to groups and organizations based on sexual orientation. This principle provides yet another basis for excluding the proposal from the company's proxy materials in reliance on Rule 14a-8(i)(7). The staff of the SEC has long held that shareholder proposals that seek to encourage or discourage donations to a particular charity or type of charity may be excluded in reliance on Rule 14a-8(i)(7). *See, e.g., T. Rowe Price Group, Inc.*, SEC No-Action Letter, 2002 WL 31890967, at *1 (Dec. 27, 2002) (granting relief under Rule 14a-8(i)(7) with regard to a proposal seeking a policy that "affirms that the corporation will not sponsor or contribute to non-profit organizations which undermine the American war on terrorism"). The staff reaffirmed this position in 2007, when it agreed with Wells Fargo that it could rely on Rule 14a-8(i)(7) to exclude a shareholder proposal that requested that the company report all charitable organizations that are recipients of company donations. *See Wells Fargo, Inc.*, SEC No-Action Letter, 2007 WL 490943 (Feb. 12, 2007). Although the resolution appeared facially neutral, the supporting statement for the proposal made clear that the proposal was intended to question Wells Fargo's charitable giving practices and object to giving to organizations to which the proponent objected. In granting no-action relief, the staff noted that "[t]here appears to be some basis for your view that Wells Fargo may exclude the proposal under rule 14a-8(i)(7), as relating to Wells Fargo's ordinary business operations (i.e., contributions to specific types of organizations)." *Id.* at *1.

The staff's position in Wells Fargo was consistent with numerous prior no-action letters. *See, e.g., Walgreen Co.*, SEC No-Action Letter, 2006 WL 3207898, at *1 (Oct. 20, 2006) (permitting exclusion under Rule 14a-8(i)(7) of proposal that Walgreen disassociate itself from the "gay games" and not provide any additional financial support to the "gay games"); *Morgan*

*Stanley*, SEC No-Action Letter, 2002 WL 31875213, at *1 (Dec. 23, 2002) (permitting exclusion under Rule 14a-8(i)(7) of a proposal seeking a policy that "affirms that the corporation will not sponsor or contribute to non-profit organizations which violate their industry's code of ethics, and in accord with this policy, the Board should discontinue any support, direct or indirect, for National Public Radio").

Consideration of the tenth principle helps demonstrate why Apache properly excluded the Proposal from its proxy materials. Apache has a decentralized operational structure, allowing management to successfully compete around the world and across a wide variety of cultures. As part of this management structure, regional operational managers are authorized to make decisions about charitable contributions, tailoring the company's eleemosynary activities to the countries and communities in which it does business. Determining how best to maximize the benefits of Apache's charitable and public activities requires a sophisticated understanding of, and sensitivity to, the nuances and complexities of religions, cultures, and values of the communities in which Apache operates. These are judgments that are well beyond the knowledge and understanding of shareholders, and that illustrate why this Proposal would impermissibly intrude on management's discretion.

C.    **The SEC Staff's Denial of No-Action Relief in *Armor Holdings* and *Aquila* Do Not Upset This Settled Interpretation**

Against this consistent and clear pattern of the application of Rule 14a-8(i)(7) by the SEC staff in the context of issuing no-action letters, the NYC Funds suggest that the staff's denials of no-action relief to Armor Holdings, Inc. and Aquila, Inc. demonstrate that the SEC's position has recently changed. *See Armor Holdings Inc.*, SEC No-Action Letter, 2007 WL 1152669 (Apr. 3, 2007); *Aquila, Inc.*, SEC No-Action Letter, 2006 WL 568662 (Mar. 2, 2006); *see also* NYC

Funds Br. at 19. But the NYC Funds misunderstand, and misrepresent, the basis for the SEC's staff's determinations in *Armor Holdings* and *Aquila*.

In *Armor Holdings*, the SEC staff denied no-action relief with respect to a substantially identical proposal to the one NYC Funds advance here. But the NYC Funds fail to appreciate that the SEC staff's response to the Armor Holdings application indicated that Armor Holdings had failed to meet its burden of explaining why the proposal related to ordinary business matters. *Armor Holdings*, 2007 WL 1152669, at *1 ("We are unable to concur in your view [that] Armor Holdings has met its burden of establishing that [it] may exclude the proposal under rule 14a-8(i)(7)"). A denial on burden grounds, however, does not establish that the Proposal may not properly be excluded; rather, such a denial indicates merely that the company failed to offer a sufficient basis for exclusion. *See, e.g., Loews Corporation*, SEC No-Action Letter, 2006 WL 760438 (Mar. 22, 2006) (granting no-action relief on reconsideration after having initially denied relief on burden grounds). Thus, contrary to the NYC Funds contention, *Armor Holdings* did not represent a new direction for SEC policy in this area. *See* NYC Funds Br. at 19 (arguing that the SEC "turned a corner" in *Armor Holdings*).

In fact, as Apache detailed at pages 4-5 of its February 8, 2008 letter to the SEC, *see* Ex. 5,[7] Armor Holdings failed to support its application with argument from or citation to the relevant SEC precedents, as Apache has done here. Moreover, the SEC staff was well aware of *Armor Holdings* in deciding to grant no-action relief to Apache — indeed, the NYC Funds relied heavily on *Armor Holdings* in opposing Apache's no-action request before the SEC. But when presented with the relevant arguments and authorities in favor of exclusion, the SEC adhered to

---

[7] Letter from S. Teslik, Sr. Vice-Pres. Policy and Governance, Apache Corporation, to Office of Chief Counsel, Div. of Corp. Finance, SEC (dated February 8, 2008), attached at Sarratt Decl. Ex. 5.

its precedent in granting Apache relief (rather than announcing that *Armor Holdings* represented a turning point, as the NYC Funds assert).

The *Aquila* no-action letter, upon which the NYC Funds also rely, provides no support for the NYC Funds' position. *Aquila* was based upon an entirely different exclusion, namely, the exclusion under Rule 14a-8(i)(10), which permits a company to exclude a proposal "[i]f the company has already substantially implemented the proposal." 17 C.F.R. § 240.14a-8(i)(10). Aquila argued that it could exclude the proposal because its equal employment opportunity policy already "prohibit[ed] discrimination based on sexual orientation and gender identity." *Aquila*, 2006 WL 568662, at *1. Aquila did not argue — and the SEC staff did not consider — whether the proposal could properly be excluded under the "ordinary business" exclusion under Rule 14a-8(i)(7). *Aquila* is thus entirely irrelevant here.

For these reasons, *Apache* is likely to succeed on the merits. At a minimum, the NYC Funds — in basing their argument for likelihood of success on the merits almost exclusively on a purported recent (and, as discussed, non-existent) departure by the SEC from its longstanding position on the "ordinary business" exclusion — have plainly failed to demonstrate the clear and substantial likelihood of success on the merits necessary to obtain mandatory injunctive relief.

## II.    The Balance of Harms Tips In Apache's Favor

In addition, the NYC Funds' application for an injunction fails for the independent reason that the balance of harms weights heavily in favor of Apache.

**1.** The NYC Funds assert that absent an injunction, they "will lose their once-annual opportunity to communicate their concerns to other Apache stockholders and have their proposal voted on." NYC Funds Br. at 21. The specific harm they identify, however, relates solely to the fact that, this year, Apache's shareholders will not have the opportunity to vote on the Proposal.

Notably, neither the Proposal, nor the NYC Funds' brief in support of it here, alleges that

Apache has engaged in any *actual* discrimination based on sexual orientation or gender identity,

or that it is perceived to have done so. Apache already has an "Equal Employment Opportunity

Policy" that confirms in the very first paragraph that "[t]he employment policy of Apache

Corporation is to provide equal opportunity to all persons." Ex. 6, Dye Aff. ¶ 15. In any event,

the NYC Funds will not lose their opportunity to communicate with shareholders absent an

injunction — rather, the NYC Funds are and have been free to make their own proxy mailing

(and need no permission or relief from this Court to do so). Moreover, neither the SEC's

issuance of the Apache No-Action Letter nor Apache's omission of the Proposal preclude the

NYC Funds from presenting the Proposal for the consideration of stockholders from the floor of

the annual meeting or through an electronic shareholder forum as permitted by SEC Rule 14a-17

*See* 17 C.F.R. § 240.14a-17. Thus, at most, the NYC Funds will be harmed by the lack of an

injunction only in having to pay to prepare and mail their Proposal to Apache's shareholders.

But that harm is plainly neither irreparable nor substantial.[8]  It is certainly far less than the harm

that Apache will suffer if it is required to postpone its annual shareholders meeting, or the

reputational harm and investor confusion that would inevitably result if it were required to

distribute the Proposal to its shareholders in a supplemental proxy, upon the order of a United

States federal district court.

---

[8] As noted, the NYC Funds go to considerable lengths to point out that they have made substantially identical proposals to a host of other corporations, some of which have adopted the proposal, while others have accepted it for inclusion in their proxy materials. These examples, of course, provide no support for the NYC Funds contention that the proposal cannot be properly excluded. If anything, that the NYC Funds have made the same proposal to numerous other corporations highlights the fact that their actions here are not motivated by their particular interests as Apache shareholders, but rather by a broader social purpose.

**2.** Moreover, under the circumstances, Apache cannot equitably be required to suffer substantial harm that is directly attributable to the NYC Funds' inexcusable delay, when Apache could have included the Proposal at little cost had the NYC Funds timely challenged the SEC Staff's decision to grant no-action relief.

Since December 18, 2007, the NYC Funds (and the rest of the investing world) have known that Apache's annual shareholder meeting would be held May 8, 2008; Apache issued a press release to that effect. Ex. 6, Dye Aff. ¶ 9.

Apache complied with the prevailing legal procedures available to a corporation that determines to omit an improper shareholder proposal from its proxy materials. From early January through mid-February 2008, Apache and the NYC Funds each sent multiple letters to the SEC staff. On March 5, the SEC staff issued its no-action letter, approving Apache's decision not to include the NYC Funds' proposal in the proxy materials. Once it received the SEC staff's no-action letter, the NYC Funds did nothing. The NYC Funds did not seek reconsideration or an appeal to the Commissioners of the SEC; they did not contact Apache to discuss the issue. On March 31, at considerable expense, Apache mailed its proxy materials. Ex. 6, Dye Aff. ¶ 10. Not until April 7 — after laying in wait for over a month — did the NYC Funds threaten Apache with legal action.

Upon learning that the NYC Funds were "considering" legal action, Apache moved immediately to avoid harm to the corporation and its shareholders by filing the Texas action. In that case, as here, Apache has submitted an Affidavit of Robert J. Dye, Apache's Vice President, Investor Relations. Ex. 6. In ¶ 13 of his Affidavit, Dye addresses the harms to Apache that would result from rescheduling or postponing Apache's annual meeting of shareholders or re-

issuing, supplementing, or amending Apache's already-mailed proxy statement, including that such action would:

a. result in negative speculation in the marketplace that could be interpreted by many stockholders and potential investors of Apache to mean that Apache is experiencing an extraordinary event (such as a takeover attempt or a serious financial problem, or an investigation into its employment practices by a government agency), and where an explanatory press release would be met with widespread skepticism;

b. result in significant, unrecoverable cost and expense in the hundreds of thousands of dollars (as much as $600,000 or more);

c. significantly disrupt Apache's business operations by requiring that Apache devote valuable staff resources and time to the preparation of additional soliciting materials, filing such materials with the SEC and rescheduling the annual meeting of stockholders;

d. create the false impression that Apache has violated the federal proxy rules, which would lead to speculation that Apache is subject to potential litigation and SEC enforcement based on various provisions of the proxy rules, such as Rule 14a-9, which prohibits solicitations containing materially false or misleading statements or omissions, and Rule 14a-4, which prohibits the solicitation of proxy authority for any matters that are not appropriately described in a company's proxy materials;

e. leave the impression in the marketplace and among Apache's business partners that Apache is not in control of its business or that Apache has acted other than in accordance with the U.S. Securities and Exchange Commission's rules and guidance;

f. confuse and confound many of Apache's stockholders, particularly if Apache's stockholders are presented with multiple, apparently similar proxy materials arriving at different times;

g. cause harm to any other stockholder whose proposal has been included in Apache's proxy material and who has a right to expect a timely vote at the scheduled annual meeting;

h. disrupt the schedules of stockholders and Directors, many residing outside of Houston, Texas, who have already made plans to attend the annual meeting at its regularly scheduled time, and whose busy schedules might prevent them from being able to attend the meeting on a different date;

i. invite negative attention by the press and others, which would negatively impact Apache's reputation and goodwill and diminish the peace of mind of Apache's officers, directors, employees, and stockholders; and

   j. damage Apache's reputation and goodwill in the marketplace.

Ex. 6-Dye Affidavit at ¶ 13.

  Given the substantial harms to Apache that would result from granting the relief the NYC Funds seek — most of which would directly result from the NYC Funds' own tactical decision to delay seeking judicial review of Apache's decision to exclude the Proposal and the SEC's concurrence in that judgment — the balance of harms strongly favors Apache. This is particularly true given that NYC Funds have the ability to contact Apache's shareholders and seek their support for the Proposal, and can also resubmit a similar, but properly tailored, proposal to Apache and request that it be included in the proxy materials for the 2009 annual shareholders meeting.

## CONCLUSION

  For the foregoing reasons, and those set forth in Apache's correspondence with the SEC, the application for a preliminary injunction should be denied.

Dated:  April 14, 2008

Respectfully submitted,


  /s/ Reid M. Figel
Reid M. Figel (SDNY RF 8663)
Kevin B. Huff (SDNY KH 9284)
W. David Sarratt (SDNY WS 1439)
KELLOGG, HUBER, HANSEN,
   TODD, EVANS & FIGEL, PLLC
1615 M. Street, NW, Suite 400
Washington, DC 20036-3209
(202) 326-7900
(202) 326-7999 (facsimile)

*Attorneys for Defendant Apache Corporation*

**<u>Certificate of Service</u>**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent via first-class mail to those indicated as non-registered participants on April 14, 2008. An additional copy of this document has also has been served on the following counsel VIA EMAIL:

Inga Van Eysden
E-mail: ivaneysd@law.nyc.ogv
Karen Seemen
E-mail: kseemen@law.nyc.gov
Jeremy Huntone
E-mail: jhuntone@law.nyc.gov
NEW YORK CITY LAW DEPARTMENT
100 Church Street
New York, NY 10007

/s/_____
       W. David Sarratt