Docket No. 08 Civ. 3458

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NEW YORK CITY EMPLOYEES' RETIREMENT
SYSTEM, THE TEACHERS' RETIREMENT SYSTEM
OF THE CITY OF NEW YORK, THE NEW YORK
CITY POLICE PENSION FUND, THE NEW YORK
CITY FIRE DEPARTMENT PENSION FUND,
THE NEW YORK CITY BOARD OF EDUCATION
RETIREMENT SYSTEM,

                                                           Plaintiffs,

                          - against -

THE APACHE CORPORATION,

                                                           Defendant.

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' MOTION FOR A PRELIMINARY
INJUNCTION**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Plaintiffs*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Jeremy I. Huntone (JH8425)*
*Tel:  (212) 788-0989*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ........................................................................................... 2

ARGUMENT

       DEFENDANT FAILS TO DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS, IRREPARABLE HARM, OR A BALANCING OF HARDSHIPS IN ITS FAVOR ................................. 4

       A.  The Funds Have Met Their Burden of Satisfying the Requirements for Injunctive Relief ................................................................................... 4

       B.  The Funds have a Substantial Likelihood of Success in Demonstrating that its Anti-Discrimination Proposal Must be Included in Apache's Proxy Solicitation Materials.. ........................... 5

       1.  The Ordinary Business Operations Exception Should Not Apply, as the Funds Seek Only to Amend Apache's Equal Employment Opportunity Policy .............................................................. 5

       2.  The Funds' Proposal Should Receive the Same Treatment as the Proposals in *Armor Holdings* and *Aquila*. ........................................................................ 7

       C.  Apache Will Not Be Irreparably Harmed by Imposition of an Injunction. ................................................ 8

CONCLUSION .............................................................................................................. 9

## TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

Howell v. Mgmt. Assistance, Inc., 519 F. Supp. 83 (S.D.N.Y. 1981) ...........................................7

New York City Employees' Ret. Sys. v. Am. Brands. Inc.,
   634 F.Supp. 1382 (S.D.N.Y. 1980) ........................................................7

Reuters, Ltd. v. United Press Int'l, Inc.,
   903 F.2d 904 (2d Cir. 1990) ...............................................................8

Roosevelt v. E.I. Du Point de Nemours & Co.,
   958 F.2d 416 (D.C. Cir. 1992)............................................................7

Sampson v. Murray,
   415 U.S. 61 (1974) ......................................................................7

Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,
   60 F.3d 27 (2d Cir. 1995) ...............................................................4

**Statutes**

17 C.F.R. 240.14-a8(i)(7) ....................................................................5


**Other**

Aquila, Inc.,2006 SEC No-Act. LEXIS 296 (March 2, 2006)....................................6, 7

Armor Holdings, Inc., 2007 S.E.C. No-Act. LEXIS 430 (April 3, 2007) ..................................6, 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

THE NEW YORK CITY EMPLOYEES' RETIREMENT
SYSTEM, THE TEACHERS' RETIREMENT SYSTEM
OF THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE PENSION FUND, THE NEW YORK CITY
FIRE DEPARTMENT PENSION FUND,
THE NEW YORK CITY BOARD OF EDUCATION
RETIREMENT SYSTEM,

08 Civ. 3458

                                        Plaintiffs,

                    -against-

THE APACHE CORPORATION,

                                        Defendant.

------------------------------------------------------------

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

### Preliminary Statement

Plaintiffs, the New York City Employees' Retirement System ("NYCERS"), the Teachers' Retirement System of the City of New York ("TRS"), The New York City Police Pension Fund ("PPF"), the New York City Fire Department Pension Fund ("FPF"), and the New York City Board of Education Retirement System ("BERS"), collectively referred to as the New York City Pension Funds (the "Funds"), submit this reply memorandum in response to defendant Apache's memorandum of law submitted in Opposition to Plaintiff's Motion for a Preliminary Injunction ("Apache Memo").

Apache fails to demonstrate that the relief sought by plaintiffs is not proper. Plaintiffs are likely to succeed in showing that Apache was required to include the Funds'

shareholder proposal in its mailing of proxy materials for its 2008 Annual Meeting of Stockholders ("2008 Annual Meeting"), and that the failure of defendant to do so will irreparably harm the Funds. Accordingly, this Court should issue a permanent injunction mandating that Apache provide shareholders with a copy of plaintiffs' proposal by performing a supplemental proxy solicitation mailing immediately.

## STATEMENT OF FACTS

In addition to the facts set forth in plaintiffs' initial memorandum of law, plaintiffs provide the following.

On October 29, 2007, Patrick Doherty, Director of Corporate Social Responsibility for the Pension Policy Division of the Office of the Comptroller of the City of New York ("the Comptroller's Office"), sent a letter to Apache stating the intent of the Comptroller's Office, on behalf of the Funds, to propose at Apache's 2008 Annual Meeting of Stockholders, a proposal that Apache amend its equal employment opportunity policy ("EEO policy") to include sexual orientation and gender identity as protected classes, and to request that the proposal be included in the proxy solicitation materials for that Annual Meeting. See Declaration of Patrick Doherty, submitted in support of plaintiffs' motion for preliminary and permanent relief, dated April 16, 2008 ("Doherty Decl."), ¶ 3.

In a telephone conversation on November 7, 2007, Kenneth Sylvester, Assistant Comptroller for Pension Policy for the Comptroller's Office, advised Sarah Ball Teslik, Senior Vice President for Policy and Governance for Apache, that Apache could fully satisfy the terms of the Funds' proposal by including "sexual orientation and gender identity" as protected classes in its EEO policy and that if Apache agreed to do so, the Funds would immediately withdraw their proposal. Consistent with the Funds' position that the resolved clause of the shareholder

proposal at issue only seeks to have Apache amend its EEO policy to include these two additional categories, Mr. Sylvester's offer did not require Apache to incorporate into its EEO policy any of the principles listed in the last whereas clause of the Funds' proposal. See id., ¶ 4.

Later on the same day, the Comptroller's Office received an email in response from Ms. Teslik, acknowledging that the Funds' proposal seeks to have "sexual orientation and gender identity" included as protected classes in Apache's EEO policy, and that Apache's EEO policy does not specify these categories as protected classes. Ms. Teslik did not agree to have Apache add those categories to its EEO policy. See Doherty Decl., ¶ 5 and Exhibit J.

On November 21, 2007, the Comptroller's Office received a further email from Ms. Teslik, which proposed that if the Funds agreed to withdraw their proposal, she would arrange a "face-to-face" meeting with Apache's Chief Executive Officer ("CEO"). See Doherty Decl., ¶ 6 and Exhibit K.

Either that day or shortly thereafter, Mr. Doherty spoke to Ms. Ball Teslik and reiterated to her that the Comptroller's Office would withdraw the proposal if Apache simply agreed to include sexual orientation and gender identity as protected classes in its EEO policy. He further informed her that the Funds would not withdraw the proposal simply in exchange for a meeting with the CEO of Apache. Once again, the Funds did not ask Apache to incorporate into its EEO policy any of the principles listed in the last whereas clause of the Funds' proposal. Ms. Teslik indicated that Apache would not accept the Funds' proposed settlement offer. See id., ¶ 7.

Mr. Doherty spoke to Ms. Teslik again the following week, and again informed her that the Comptroller's Office would withdraw the proposal if Apache agreed to include sexual orientation and gender identity as protected classes in its EEO policy, and again

- 3 -

emphasized that the Funds were not asking Apache to incorporate into its EEO policy any of the principles listed in the last whereas clause of the Funds' proposal. Ms. Teslik did not indicate that Apache would accept that renewed offer. See id., ¶ 8.

In addition to Apache, the Comptroller's Office, on behalf of the Funds, in 2007 requested that two dozen other companies include nearly identical resolutions in their proxy solicitation materials. See id., ¶ 9. To date, eleven of these companies have agreed to revise their EEO policies to forbid discrimination based on sexual orientation and gender identity, without requiring a stockholder proxy vote. As a result, the Funds have withdrawn those resolutions. Additionally, ExxonMobil has agreed for the eighth year in a row to submit the Funds' proposal to the shareholders. Other than Apache, no other company requested a "no-action" letter from the SEC. See id., ¶ 10.

## ARGUMENT

### DEFENDANT FAILS TO DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS, IRREPARABLE HARM, OR A BALANCING OF HARDSHIPS IN ITS FAVOR.

**A.    The Funds Have Met Their Burden of Satisfying the Requirements for Injunctive Relief.**

In Apache's Memo, Apache contends that the Funds fail to satisfy the requirements for preliminary relief that seeks to alter the status quo, by showing a "clear or substantial likelihood of success" on the merits. See Apache Memo, pp. 7-8; see also Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27 (2d Cir. 1995). More specifically, Apache contends that because the standard for preliminary relief is "heightened" when a movant for preliminary relief seeks to alter the status quo, rather than simply maintain it, the Funds have, therefore, failed to meet the standard for the relief requested. See Apache Memo, pp. 7-8.

- 4 -

On the contrary, the Funds have shown that they have a substantial likelihood of success in demonstrating that their anti-discrimination proposal must be included in Apache's proxy solicitation materials. Accordingly, the Funds have satisfied the standard for preliminary and permanent relief.

**B.    The Funds have a Substantial Likelihood of Success in Demonstrating that Their Anti-Discrimination Proposal Must be Included in Apache's Proxy Solicitation Materials.**

**1.    The Ordinary Business Operations Exception Should Not Apply, As The Funds' Propose Only Have Apache Amend its Equal Employment Opportunity Policy.**

Apache relies entirely upon Rule 14a-8(i)(7), the ordinary business operations exception, as the basis of its exclusion of the Funds' shareholder proposal from its proxy materials. In doing so, Apache specifically cites to principles seven through ten listed in the last "whereas" clause of the proposal, and claims that by stating these principles, the Funds' seek to control the ordinary business operations of the corporation. This is untrue.

A plain reading of the proposal illustrates that the Funds are not attempting to control ordinary business operations. The language of the proposal makes clear that the Funds do not seek to compel Apache to implement the "principles" listed. That is, the Funds do not propose that company operations related to matters such as advertising, sale of goods, or charitable contributions be altered. Rather, the Funds included these principles in the proposal to illustrate that other Fortune 500 companies prohibit discrimination on the basis of sexual orientation and gender identity in these areas. The proposal, however, only seeks an addition to Apache's EEO policy. The proposal states: "**RESOLVED**: The Stockholders request that management implement EEO policies based on the aforementioned principles prohibiting discrimination based on sexual orientation and gender identity." Thus, it is clear that the principles cited in the proposal, and the implementation of policies related to these principles by

other Fortune 500 companies, motivated the Funds' to propose an amendment to Apache's equal employment opportunity policy. The proposal does not seek to have Apache adopt the principles. See Declaration of Richard S. Simon, submitted in support of plaintiffs' motion for a temporary restraining order and a preliminary injunction, dated April 7, 2008 ("Simon Decl."), Exhibit A.

Prior discussions between the parties in this case illustrate that Apache clearly understands that the Funds seek only to propose a revision of Apache's EEO policy to include a provision prohibiting discrimination based on sexual orientation and gender identity. See Doherty Decl.

This point is further demonstrated by actions taken by other companies. In addition to Apache, the Funds in 2007 requested that two dozen other companies include nearly identical resolutions in their proxy solicitation materials. See Doherty Decl., ¶ 9. Eleven of these companies have agreed to simply amend their equal employment opportunity policies to prohibit discrimination on the basis of sexual orientation and gender identity, without requiring a stockholder proxy vote. As a result, the Funds have withdrawn those shareholder proposals. See Doherty Decl., ¶ 10.

Thus, in addition to the fact that the proposal involves significant social policy issues, the ordinary business operations exception is not applicable on the grounds that the Funds' proposal does not attempt to micromanage Apache, and does not interfere with ordinary business operations, but seeks only to propose that Apache expand its equal employment opportunity policy to include the two categories at issue.

2.    **The Funds' Proposal Should Receive the Same Treatment as the Proposals in**
      ***Armor Holdings* and *Aquila*.**

Apache relies almost entirely upon prior SEC staff no-action letters in an attempt

to persuade the Court that the SEC has sanctioned the exclusion of proposals similar to the

Funds' proposal, which seek to prohibit discrimination on the basis of sexual orientation and

gender identity. As was discussed in the Memorandum of Law In Support of Plaintiffs' Motion

for a Temporary Restraining Order and a Preliminary Injunction ("the Funds' Memo"), the Court

owes little deference to SEC no-action letters, as they provide relatively little authority in

comparison to the more formal SEC Interpretive Releases in 1976 and 1998, which support

inclusion of the Funds' proposal in Apache's proxy materials. However, if the Court is inclined

to consider the SEC staff's no-action letters, the Court should note that the staff's most recent

no-action letters favor the inclusion of the Funds' proposal. See Armor Holdings, Inc., 2007

SEC No-Act. LEXIS 430 (April 3, 2007) ("*Armor Holdings*"); Aquila, Inc., 2006 SEC No-Act.

LEXIS 296 (March 2, 2006) ("*Aquila*").

Apache's attempt to distinguish *Armor Holdings* by stating that Apache simply

did a better job of arguing its position than Armor is unconvincing.  Moreover, their attempt

distinguish *Aquila* is similarly unpersuasive.  The proposals at issue in *Armor Holdings* and

*Aquila* involved the same subject matter at issue in the Funds' proposal:  prohibiting employment

discrimination on the basis of sexual orientation and gender identity.  Irrespective of how

aggressively Apache defended its exclusion of the Funds' proposal from its proxy materials on

the basis of the ordinary business operations exception, or how passively Apache claims Armor

Holdings, Inc. defended its exclusion of the proposal at issue there, the fact remains that the SEC

has, in recent years, implicitly, if not explicitly, recognized the significant social policy issues

involved in these types of shareholder proposals, and thereby refused to issue no-action letters.

- 7 -

This recent trend is significant, as Apache relies heavily upon prior SEC no-action letters as the basis for its argument. Apache contradicts itself by relying so heavily upon these letters, and then vainly attempting to distinguish those that do not support its position. The Funds' proposal involves the same subject matter as those in *Armor Holdings* and *Aquila*, is identical in form to the *Armor Holdings* proposal, and should therefore receive the same treatment.

**C.    Apache Will Not Be Irreparably Harmed By the Imposition of An Injunction.**

As a matter of law, plaintiff cannot assert irreparable harm if it is forced to incur additional expenses if the United States District Court for the Southern District of New York orders plaintiff perform a supplemental mailing, since this merely involves monetary losses which easily can be compensated by money damages if plaintiff were to ultimately prevail on the merits. See Sampson v. Murray, 415 U.S. 61, 88 (1974). Supplemental mailings have been ordered despite any hardship that the company may incur. See New York City Employees' Ret. Sys. v. Am. Brands, Inc., 634 F.Supp. 1382, 1392-1393 (S.D.N.Y. 1980); see also Roosevelt v. E.I. Du Point de Nemours & Co., 958 F. 2d 416; Howell v. Mgmt. Assistance, Inc., 519 F. Supp. 83 (S.D.N.Y. 1981).

Furthermore, defendant's argument that it would suffer irreparable harm because if it was directed to do a supplemental mailing, this would "leave an impression" that "Apache is not in control of its business or that [it] has acted other than in accordance with the Securities and Exchange Commission's rules and guidance," and that this would "confuse and confound" stockholders, "invite negative attention," and "damage [its] reputation and goodwill" is, at best, speculative. Apache Memo, pp. 24-25. These types of assertions of injuries that are not supported by evidence fail to establish a substantial threat of irreparable harm. See Reuters, Ltd. v. United Press Int'l, Inc., 903 F.2d 904 (2d Cir. 1990) (Irreparable harm must be shown by the

moving party to be imminent, not remote or speculative, and the alleged injury must be one incapable of being fully remedied by monetary damages).

Apache's refusal to allow its shareholders to consider the Funds' anti-discrimination proposal, the SEC's "no action" letter, and all the preceding correspondence, have been in the public record for quite some time, and is in fact available on Lexis and other public databases for public review and scrutiny by stockholders, the press, or any other interested party. Moreover, Apache was well aware that the issuance of a "no action" letter" does not preclude stockholders whose proposals are denied inclusion in a company's proxy materials from seeking judicial review.  If Apache was so concerned about public scrutiny and the effect its denial of inclusion of the Funds' anti-discrimination proposal would have on it, then Apache should have presented the proposal to its stockholders for consideration.  Apache's Board of Directors then could have chosen to recommend to the stockholders to vote against the proposal, and stated the reasons for its recommendation.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that this Court preliminarily and permanently enjoin Apache from soliciting stockholder proxies for its 2008 Annual Meeting without informing its stockholders of the Funds' shareholder proposal, enjoin Apache from employing proxies solicited in such a manner, and further direct Apache to make a

supplemental mailing to inform its stockholders about, and to solicit proxies on, the Funds' shareholder proposal.

Dated:  New York, New York
        April 16, 2008

                                    MICHAEL A. CARDOZO
                                    Corporation Counsel of the
                                      City of New York
                                    Attorney for Plaintiffs
                                    100 Church Street, Room 5-149
                                    New York, New York 10007
                                    (212) 788-0989

                                    By:  _____
                                         Jeremy I. Huntone (JH 8425)
                                         Assistant Corporation Counsel

Of Counsel:
        Inga Van Eysden
        Karen J. Seemen
        Jeremy I. Huntone